**UNITED STATES of America,**
**Appellee,**

v.

**Roy Lee CRAWFORD, Appellant.**

**No. 20310.**

United States Court of Appeals,
Eighth Circuit.

Feb. 17, 1971.

Ivan E. Barris, Joseph W. Louisell, Detroit, Mich., for appellant.

Robert G. Renner, U. S. Atty., Neal J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HEANEY, Circuit Judge.

Roy Crawford was convicted on all four counts of an indictment charging him with the sale of cocaine and heroin to a government informant on September 26 and September 30, 1969, in violation of 26 U.S.C. § 4704(a) and § 4705 (a). He was sentenced to ten years on each count, the sentences to run concurrently.

Crawford contends on appeal that the trial court erred in (1) permitting the prosecution to cross-examine the defendant about his association with persons who were addicts or convicted drug sellers, (2) admitting evidence of and allowing the prosecutor to comment upon Crawford's alleged sales of narcotics to the government informant on occasions other than those charged in the indictment, and (3) refusing to permit the defense counsel to ask the government informant whether or not she had some hope of leniency by virtue of the testimony she was giving against the defendant.[1]

The government established its case through the informant Geraldine Parker, and Special Agents of the Bureau of Narcotics and Dangerous Drugs. Mrs. Parker, a confessed addict and drug dealer, was arrested on September 25, 1969, for selling heroin to a Special Agent. In return for preferential treatment, she agreed to cooperate with the government in building a case against Crawford. At trial, Mrs. Parker testified, over defense objections, that her husband had purchased heroin and cocaine from Crawford on a regular basis from March, 1967, to September, 1969, and that she had purchased narcotics from Crawford on about six occasions during the same period. She stated that the drugs had either been used by her or her husband, or had been resold to others. Mrs. Parker testified that she purchased heroin and cocaine from Crawford on September 26 and September 30, 1969. Her testimony with respect to these purchases was corroborated by Special Agents who observed the contact between Mrs. Parker and Crawford on both dates. The agents testified that they gave Mrs.

---

1. Mrs. Parker was jailed for one day and released without bail. She had not been brought to trial for selling drugs as of the date of Crawford's trial.

We find no merit in the defendant's contention that he was denied an adequate opportunity to cross-examine the informant. The government conceded in its opening statement that the informant had agreed to work for the government "in the hopes of getting some preferential treatment." Furthermore, the court permitted the defense to examine the informant in some detail with respect to the inducements offered her to cooperate with the government. McWilliams v. United States, 394 F.2d 41 (8th Cir. 1968), cert. denied, 393 U.S. 1044, 89 S.Ct. 643, 21 L.Ed.2d 593 (1969); Pope v. United States, 372 F.2d 710 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); United States v. DeLeo, 422 F.2d 487 (1st Cir. 1970), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); United States v. Battaglia, 394 F.2d 304 (7th Cir. 1968); Levin v. United States, 119 U.S.App.D.C. 156, 338 F.2d 265 (1964), cert. denied, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965); Deschenes v. United States, 224 F.2d 688 (10th Cir. 1955).

Parker money to make the purchases, searched her before the contact, and received narcotics from her after the contact.

Crawford, who took the stand on his own behalf, testified that he had known Sam Parker since 1967, but that he first met Mrs. Parker on September 26, 1969. He stated that Mrs. Parker had sought to purchase narcotics from him on that date but that he had told her he knew nothing about narcotics. He denied meeting Mrs. Parker on September 30. Crawford's direct examination ended with the following colloquy:

"Q. Mr. Crawford, have you at any time sold narcotics, transferred narcotics to either Geraldine Parker or Sam Parker? A. No, I haven't.

"Q. Have you ever in your life had occasion to handle in any way—for profit or otherwise—narcotics? A No.

"Q. Have you ever in your lifetime been convicted of a crime? A. No."

He was asked the following questions on cross-examination:

"Q. Mr. Crawford, do you know any people who are either drug addicts or who have been convicted of selling drugs, or do sell drugs? * * *

" * * * A. No. I know some people. Whether they sell drugs or not, I don't know.

"Q. Well, do you know Samuel Parker? A. Yes, I know Sam Parker.

"Q. And has Sam Parker ever been at your house?

"A. Yes.

"Q. Do you know Geraldine Parker? A. I met Geraldine Parker in (pause)

"Q. But you do know her? A. Yes, I know her.

"Q. Now, I am sure you are aware that Samuel Parker has pled guilty to the possession of narcotic drugs? A. No.

"Q. Do you know that Sam Parker has indicated and petitioned the United States Attorney indicating that he is a drug addict and requesting that he be committed to Lexington, Kentucky? A. I do now. I didn't then.

"Q. You heard Geraldine Parker admit that she was a drug addict? A. Yes.

"Q. You heard Geraldine Parker admit that she sold drugs? A. Yes.

"Q. Do you know any other drug addicts or people who sell drugs? A. * * * I know some other people, but as far as their drug addiction, I have no knowledge of it.

"Q. Do you know a man named Freddie Golden?

"A. Yes, I know Freddie Golden.

"Q. You know that Freddie Golden— has he ever been at your house? A. Yes, he has been at my house.

"Q. Do you know that Freddie Golden about six weeks ago one court room over was convicted of selling drugs?

"A. No, I didn't know that.

"Q. You didn't know that. Do you know a man named Joe Tanksley? A. Yes, I know Joe.

"Q. Has he ever been at your house? A. No.

\* \* \* \* \* \*

"Q. Now, do you know that Joe Tanksley about two weeks ago pled guilty in the United States District Court in St. Paul for the sale of drugs? A. No, I didn't know that.

\* \* \* \* \* \*

"Q. Do you know a man named Carl Boyd?

"A. Yes, I knew Carl Boyd.

"Q. Do you know that Carl Boyd has a record for usage of drugs? A. No.

"Q. Did you know that he was convicted in 1952 for the sale of heroin in the United States District Court? A. No, I didn't.

\* \* \* \* \* \*

"Q. Mr. Crawford, do you know a man named Bobby Bannarn? A. Yes, I know Bobby Bannarn.

"Q. You know he has got a record for possession of narcotic drugs? A. No, I didn't."

An unsuccessful objection to the above line of questioning was taken at an early point in the cross-examination.[2]

We turn first to:

## THE CROSS-EXAMINATION OF CRAWFORD

█ We hold that the trial court exceeded its discretion in permitting the government to cross-examine Crawford with respect to his alleged acquaintance with Golden, Tanksley, Boyd and Bannarn, who were identified in the questioning as having been convicted for the possession or sale of drugs.

The questions prejudiced the defendant in the eyes of the jury by insinuating that he was a member of a ring of narcotics users and peddlers. Whatever the truth of the insinuations, it was not proper to raise and explore the issue in this manner.

The defendant, by testifying that he had not met Mrs. Parker until September 26 and that he had never sold narcotics to her or her husband, opened himself to a searching examination of his dealings with them in narcotics. But testimony with respect to the Parkers and his denial that he handled narcotics did not place his general character in issue, so as to permit cross-examination into matters beyond the scope of the direct examination which the prosecution could not prove on direct examination and which tended to prejudice the defendant.[3] Specifically, he did not open the door to questions regarding his association with unsavory characters, i. e., convicted drug users, possessors and sellers.[4]

This holding establishes no new principle. We follow a long line of precedents in which we have held that it is improper to ask a defendant, who has not placed his general character in issue, whether he has been previously arrested,[5] jailed,[6] indicted,[7] convicted of a crime other than a felony,[8] whether he has committed acts of misconduct,[9] or whether he is in possession of stolen property other than that which is the subject of the prosecution.[10]

█ The government argues that the defendant "opened the door" to the cross-examination in question by his direct testimony. While we agree that a defendant can open the door to otherwise impermissible cross-examination by his direct testimony, we do not believe that the cross-examination can be so justified in this case. In our view, cross-examination in response to statements of the defendant made on direct examination must either clarify the point raised or tend to directly impeach the defendant

---

2. The government raises no question respecting the form or timeliness of the defendant's objection.

3. Gideon v. United States, 52 F.2d 427 (8th Cir. 1931) ; United States v. Nettl, 121 F.2d 927 (3rd Cir. 1941).

4. Apt v. United States, 13 F.2d 126 (8th Cir. 1926) ; Miller v. Territory of Oklahoma, 149 F. 330, 338 (8th Cir. 1906) (involving a witness other than the accused) ; United States v. Tomaiolo, 249 F.2d 683, 687–689 (2nd Cir. 1957).

5. Echert v. United States, 188 F.2d 336 (8th Cir. 1951) ; Salerno v. United States, 61 F.2d 419, 424 (8th Cir. 1932) ; Terzo v. United States, 9 F.2d 357 (8th Cir. 1925) (involving a witness other than the accused).

6. Packineau v. United States, 202 F.2d 681, 688 (8th Cir. 1953) (involving a witness other than the accused).

7. Glover v. United States, 147 F. 426 (8th Cir. 1906) (involving a witness other than the accused) ; United States v. Yarbrough, 352 F.2d 491 (6th Cir. 1965).

8. Haussener v. United States, 4 F.2d 884 (8th Cir. 1925).

The trial court may permit a defendant to be cross-examined, however, as to prior felony convictions for the honest purpose of affecting credibility. Williams v. United States, 3 F.2d 129 (8th Cir. 1924) (involving a witness other than the accused) ; United States v. Pennix, 313 F. 2d 524 (4th Cir. 1963).

9. Little v. United States, 93 F.2d 401, 407–408 (8th Cir. 1937), cert. denied, 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105 (1938). See also for prejudicial error, Salerno v. United States, supra at n. 5.

10. Edwards v. United States, 18 F.2d 402 (8th Cir. 1927).

on that point. The cross-examination here did neither. It merely threw a shroud of suspicion over the defendant and his knowledge of the drug traffic.[11]

The cases cited by the government are distinguishable on their facts on this basis.

In Hayes v. United States, 407 F.2d 189 (5th Cir. 1969), the defendant had testified in his direct examination that:

"One day I left [prison] and went back about three or four months later and they marked up an escape against me, and they still turned me outside even then. I was never locked up."

In light of this testimony, the prosecutor was allowed to ask the defendant whether he had escaped from prison. The question was one of mere clarification.

In United States v. Whiting, 308 F.2d 537 (2nd Cir. 1962), the prosecutor was permitted to question the defendant about a non-felony conviction in the military, where earlier, on direct examination, the defendant had made the bald assertion that he had never been convicted of a crime. The cross-examination directly refuted the defendant's testimony and was thus a permissible attack on his credibility.

The defendant in Burrows v. United States, 371 F.2d 434 (10th Cir. 1967), testified in his defense that he had been in Des Moines, Iowa, in order to join the Marine Corps and had then decided to travel to California for that purpose. While the facts in the case are briefly drawn, it appears that the prosecutor, in subsequent cross-examination, sought to show that the defendant had actually been in Des Moines for a parole violation investigation and that such a violation would disqualify the defendant from the Marine Corps. It is clear that the prosecutor's line of questioning tended to directly impeach the defendant's testimony concerning the reason for his presence in Des Moines. For this purpose, we would have permitted the cross-examination.

The last case cited by the government is United States v. Taylor, 312 F.2d 159 (7th Cir. 1963). There, the defendant was charged with facilitating the sale of narcotics. A government agent testified that the defendant, when arrested, admitted his guilt stating that he had allowed his apartment to be used for the sale in hopes of obtaining a portion of the narcotics for himself. The defendant denied making such a statement in direct testimony and was then cross-examined as to whether he was a drug addict. Here, we think the cross-examination was proper. It showed a motive for the admissions attributed to the defendant and discredited his denial of these admissions.

The government next argues that even if the cross-examination of Crawford was error, we should not reverse because it was harmless error as defined by Rule 52(a), Fed.R.Crim.P.

■ We do not agree. The government case was of sufficient strength to support the jury's verdict but the prejudicial impact of the improper cross-examination was so severe as to require reversal.

Our Court has long taken a jaundiced view of the harmless error argument in this context:

"When, in the prosecution of a defendant, counsel for the government indulges in unfair and improper cross-examination, the only purpose of which is to degrade the defendant and to prejudice the jury against him, the government, upon appeal, will not ordinarily be heard to say that the methods which were used did not have the effect which they were obviously intended to have."

Salerno v. United States, 61 F.2d 419, 424 (8th Cir. 1932). See also, Little v.

---

11. See generally, United States v. Tomaiolo, *supra*, n. 4; United States v. Provoo, 215 F.2d 531 (2nd Cir. 1954). A good example of the proper application of the

"opened door" exception is found in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

United States, 93 F.2d 401, 408 (8th Cir. 1937), cert. denied, 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105 (1938); Echert v. United States, 188 F.2d 336, 341 (8th Cir. 1951); United States v. Pennix, 313 F.2d 524, 531 (4th Cir. 1963).

In our view, the proper test for us to apply was set out in Kotteakos v. United States, 328 U.S. 750 at 764, 66 S.Ct. 1239 at 1247, 90 L.Ed. 1557 (1946):

> " * * * [T]he question is, not were [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting."

See also, Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Echert v. United States, *supra.*

Here, the government portrayed for the jury a defendant all of whose friends or acquaintances were addicts or peddlers. This effort was the main thrust of the government's cross-examination of the defendant. The prosecutor began the line of questioning by asking the defendant if he knew any people who were "either drug addicts or who have been convicted of selling drugs, or do sell drugs." A negative answer was given. This question itself was far broader than the testimony given by the defendant on direct examination. The prosecutor then proceeded to intersperse the remaining cross-examination with questions relating to the defendant's friends or acquaintances and to his knowledge of their addiction or drug records. While the government never did produce evidence indicating that the defendant knew that these people were addicts or sellers, it was able to connect him in the eyes of the jury with an entire group of undesirables.

A new trial without the cross-examination found objectionable here may well bring the same result. We are un-able, however, to say that the present verdict was reached without the prejudicial influence of improper cross-examination. In today's society, possibly no act is more abhorred than the selling of narcotics. And nothing makes it more difficult for a defendant to receive a fair and unbiased trial than for the jury to think that the defendant or his acquaintances are men of bad character. When the act with which the defendant is charged is related to the evidence of bad character, the prejudice is intensified. See, *e. g.,* Osborne v. United States, 351 F.2d 111, 117, 118 (8th Cir. 1965).

In view of the fact that this case will probably be retried, we believe it advisable to discuss, though we need not decide, whether the trial court erred in receiving:

## MRS. PARKER'S TESTIMONY WITH RESPECT TO PRIOR NARCOTICS SALES BY THE DEFENDANT

The federal courts have long excluded from a criminal prosecution evidence of prior criminal activity not charged in the indictment or information.

> "The general rule is that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. The accused is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the information. It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the information. Evidence of other crimes compels a defendant to meet charges of which the information or indictment gives no information, confuses him in his defense and raises a variety of false issues. Thus, the at-

tention of the jury is diverted from the charge contained in the indictment or information. * * * "

Kempe v. United States, 151 F.2d 680, 687 (8th Cir. 1945).

Several exceptions to this rule have developed which permit the admission of evidence of prior criminal activity to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, or (5) the identity of the accused.[12]

■ Mrs. Parker's testimony that she had previously purchased narcotics from Crawford was received by the trial court "only as it may relate to the intent of the defendant."[13] The difficulty with this theory ordinarily would be that §§ 4704(a) and 4705(a) have been construed as requiring no proof of intent.[14] Under the Harrison Narcotics Act, which preceded the present act and was substantially identical to it " * * * criminal intent is not an element of the offense of selling narcotic drugs in violation of [the precursor of § 4705(a)]. * * * The motive with which one may have engaged in such forbidden selling * * * is wholly immaterial." Davis v. United States, 306 F.2d 317 (8th Cir. 1962), cert. denied, 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963); Daugherty v. United States, 2 F.2d 691 (8th Cir. 1925), reversed on other grounds, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309 (1926); Guilbeau v. United States, 288 F. 731 (5th Cir. 1923).

"The offense described in * * * § 4704(a) * * * does not include a particular state of mind as an element of the offense. Any sale of narcotic drugs is a violation of § 4704(a) unless the drugs are sold in the original stamped package or sold from the original stamped package. * * * "

United States v. Dillard, 376 F.2d 365, 368 (7th Cir. 1967).

Here, however, the trial court submitted the case to the jury on the theory that the government had the burden of proving a specific intent to willfully violate the law. In the light of such submission, the receipt of the evidence for the purpose of showing intent was not error.

We do not decide at this time whether the evidence may also be admissible under another exception. See, United States v. Lewis, 423 F.2d 457 (8th Cir. 1970). We point out only that care must be exercised in receiving it.

The danger of prejudice to a defendant because of the admission of evidence of other crimes is always great. The nature of such prejudice is demonstrated by the case before us. After Mrs. Parker's testimony respecting Crawford's alleged prior narcotics sales had been introduced, the defense had two alternatives: to either let the testimony stand,

12. United States v. Lewis, 423 F.2d 457 (8th Cir. 1970); Love v. United States, 386 F.2d 260 (8th Cir. 1967), cert. denied, 390 U.S. 985, 88 S.Ct. 1111, 19 L.Ed.2d 1286 (1968); Hamilton v. United States, 409 F.2d 928 (5th Cir. 1969); United States v. Phillips, 401 F.2d 301 (7th Cir. 1968); Robinson v. United States, 366 F.2d 575 (10th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967); Medrano v. United States, 285 F.2d 23 (9th Cir. 1960), cert. denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258 (1961).

13. In admitting the evidence, the District Court admonished the jury to consider the evidence only on the question of intent and gave limiting instructions before the jury retired to consider its verdict.

14. If intent is an essential element of the crime, evidence of other acts similar in nature and closely related in time to those encompassed in the charge is admissible to establish intent. Von Feldt v. United States, 407 F.2d 95 (8th Cir. 1969) and cases cited therein. See, United States v. Bessesen, 433 F.2d 861 (8th Cir. 1970); Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

But when intent is not an element of the offense, the admission of evidence of prior criminal activity under the intent exception is error. See, Hamilton v. United States, supra; Baker v. United States, 227 F.2d 376 (5th Cir. 1955); United States v. Klass, 166 F.2d 373 (3rd Cir. 1948).

**448**

or to cross-examine the witness and run the risk of eliciting more damaging testimony. The defendant elected to rebut her testimony by both a specific and a general denial in his own direct examination. These denials were then used by the government as the basis for the line of cross-examination which we have held to be prejudicial error.[15]

If Crawford's defense had raised the questions of mistake, identity, motive, or lack of scheme or plan, the government could have met this defense on its rebuttal. The Second Circuit has suggested that the preferable method of dealing with evidence of prior crimes is to defer its introduction until the defense case makes the proof of prior crimes necessary. United States v. Adams, 385 F.2d 548 (2nd Cir. 1967). We think the suggestion is one deserving serious consideration.

Reversed and remanded for a new trial.

15. The trial court, in the light of Crawford's general denial, in its discretion might have permitted the government to cross-examine Crawford as to sales to others but such an examination should have been permitted only if the trial court had determined that its purpose was an honest one and was not asked merely to arouse unjust suspicion in the minds of the jurors. In such event, the government would be bound by the defendant's answer unless it produced evidence as to such sales.