UNITED STATES of America, Appellee,

v.

Matthew GRAY, Jr., Appellant.

No. 72–1030.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1972.

Decided July 26, 1972.

Rehearing Denied Aug. 18, 1972.

Glen C. Schomburg, Kirkwood, Mo., for appellant.

David W. Harlan, Asst. U. S. Atty., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and URBOM,* Chief District Judge.

URBOM, Chief District Judge.

The defendant Matthew Gray, Jr. was indicted by a federal grand jury and, after a jury trial, was convicted on two counts of transporting in interstate commerce falsely made, forged and counterfeited securities, namely, two money orders of the American Express Company, in violation of Title 18 U.S.C. § 2314. Following his jury conviction, the district court sentenced the defendant to five years' imprisonment on each count, to run concurrently. A multitude of issues has been presented on appeal, including the right to obtain grand jury minutes, the constitutionality of 18 U.S.C. § 2314, a plethora of evidentiary rulings, sufficiency of the evidence as to *mens rea*, the propriety of numerous instructions given to the jury, and the effective assistance of counsel at trial.

▮ All the issues presented to the court in the brief and reply brief submitted by the appellant's court-appointed counsel [1] have been carefully considered. We affirm the judgment of conviction.

During Gray's one-day trial on December 13, 1971, the government called 13 witnesses in support of its charge and after the conclusion of the government's case the jury was instructed. On the same day the jury returned a verdict of guilty on both counts. The charges against Gray arose out of two incidents in September, 1970. On both occasions, the testimony shows, Gray cashed American Express money orders in St. Louis, Missouri, which were drawn on and payable by the American Express Company in New York, New York. These money orders had been taken from Sam's Salvage Market on September 2, 1970. Sam DeWoskin, the owner and operator of Sam's Salvage Market, testified over the objection of defense counsel that the American Express Company money orders had been stolen from his place of business. Later by letter DeWoskin notified the American Express Company as to the loss. Further, DeWoskin testified that the government's Exhibits 2 and 3, which were the American Express Company money orders cashed by Gray and listing Gray's name as the payor, were part of those taken from his store. On September 4, 1970, Gray cashed Exhibit 2, an American Express money order in the amount of $152.00, at the Barnes Hospital. The hospital cashier, Wilma Truelove, testified that before cashing the money order she received the consent of the hospital employee in charge of patient accounts. Apparently, Gray was permitted to cash the money order because he had a clinic account with the hospital. The other money order, Exhibit 3, was for the amount of $69.33 and was negotiated on September 3, 1970, to Gray's landlord, Phil Vonder Haar, for rent.

Frank Coverly, an employee of the American Express Company money order division, testified that the two money orders involved [Exhibits 2 and 3] were issued by the American Express Company. During the course of the direct examination of Coverly, defense counsel

---

* Of the District of Nebraska, sitting by designation.

1. The allegations of ineffective assistance of counsel, raised by the defendant in his *pro se* brief, are not properly before the court at this time. An adequate post-conviction procedure is afforded by 28 U.S.C. § 2255 for developing a factual record to support these allegations, if they can be so supported. That procedure obviates the deciding of the issue without opportunity for all parties to unfold the facts.

objected to the government counsel's questions to the witness concerning the report of the loss apropos Exhibits 2 and 3. The basis of the objection to the trial court was that the defendant was not able to confront the individual making the report to Coverly. The district court overruled that objection.[2]

Additional evidence was introduced that the defendant had cashed money orders drawn on the Consumer Money Order Corporation. He was not charged with passing those money orders, and the evidence of those transactions sought to establish *mens rea*.

Neither the defendant nor any defense witness testified.

## I.

### THE GRAND JURY MINUTES

█ It is the contention of the defendant that his Fifth Amendment right was violated because the grand jury made no written record of its proceedings. Two recent cases of this court, United States v. Franklin, 429 F.2d 274 (8th Cir. 1970), and United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), control here. In *Harflinger* this court stated:

"We find no constitutional right to have grand jury proceedings recorded. The trial court properly denied Harflinger's pretrial motion to inspect the grand jury minutes."

## II.

### MOTION FOR BILL OF PARTICULARS

In his motion for a bill of particulars Gray requested:

1. The manner in which the money orders were caused to be transported in interstate commerce;
2. The manner in which they were falsely made;
3. The facts by which the defendant knew they were falsely made.

---

2. In fact, the defendant was afforded the opportunity to confront the witness that had notified the American Express Com-

█ It is axiomatic that a motion for a bill of particulars is addressed to the sound discretion of the trial court. Pines v. United States, 123 F.2d 825 (8th Cir. 1941) and Hemphill v. United States, 392 F.2d 45 (8th Cir. 1968). We find no abuse of discretion here.

## III.

### ATTACK ON 18 U.S.C. § 2314

█ It is difficult to ascertain the precise thrust of the defendant's argument. He does state that the government did not have a scintilla of evidence linking the crime he committed to interstate commerce. Further, he states that the words appearing on the face of the American Express Company money order, "AMERICAN EXPRESS COMPANY AGREES TO PAY AT 65 BROADWAY, NEW YORK, N. Y.," were too small to afford the defendant sufficient knowledge that the cashing of a money order would involve an interstate transaction. Finally, the defendant asserts that the government has failed to show a principal-accessory relationship. These arguments are without merit. In Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), the Supreme Court stated:

"18 U.S.C. (Supp. V) § 2314, 18 U.S.C.A. § 2314 requires (1) knowledge that certain property has been stolen or obtained by fraud, and (2) transporting it, or causing it to be transported in interstate commerce. . . . The transporting charge does not require proof that any specific means of transporting were used, or that the acts were done pursuant to a scheme to defraud . . . United States v. Sheridan, 329 U.S. 379 [, 67 S.Ct. 332, 91 L.Ed. 359]. When Pereira [defendant-petitioner] delivered the check, drawn on an out-of-state bank, to the El Paso bank for collection, he 'caused' it to be transported in interstate commerce. It is common knowl-

---

pany as to the loss of money orders, including the government's Exhibits 2 and 3, through the testimony of DeWoskin.

edge that such checks must be sent to the drawee bank for collection, and it follows that Pereira intended the El Paso bank to send his check across state lines. . . . "

See also, United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946); Amer v. United States, 367 F.2d 803 (8th Cir. 1966).

## IV.

## EVIDENTIARY RULINGS

■■ The defendant complains that two witnesses, Sam DeWoskin and William Smith, were permitted to testify that money orders were *stolen* from their businesses, rather than being limited to testifying that the money orders had disappeared. We agree with the position adopted by the Tenth Circuit in Stone v. lay witnesses should be permitted to use these short-hand descriptions in giving their testimony. At least in the context of this case, the use of the word "stolen", albeit a legal conclusion, did not result in prejudice. In such cases any possible prejudice can be removed easily by the defense counsel at trial on cross-examination.

■ Error is claimed with respect to Exhibit 11, a fingerprint chart which showed similarities between a known fingerprint of the defendant and a latent fingerprint found on a Consumer money order, Exhibit 8. The gist of the defendant's complaint is that certain red arrows on the exhibit for the purpose of pointing out similarities in the two prints were prejudicial. Those markings were obviously made to assist the jurors in understanding the testimony of the government's fingerprint expert. Assistance in understanding is to be commended, rather than condemned.

■ During the trial, the government placed into evidence Exhibit 8, a Consumer money order. The purpose was to establish the defendant's intent in negotiating the two American Express money orders. It was undisputed that the Consumer money order was cashed several weeks after the American Express Company money orders. A contention is made by the defendant that Exhibit 8 and the testimony of the three witnesses about that exhibit insufficiently linked him to that money order and that the evidence was too remote in time to be used to prove intent. Ultimately this issue turns upon the resolution of whether the subsequent criminal act, the cashing of another money order, was closely connected with the offense charged and tends to prove intent. United States v. Crawford, 438 F.2d 441, 447, fn. 14 (8th Cir. 1971); United States v. Spica, 413 F.2d 129 (8th Cir. 1969); II Wigmore on Evidence, § 313 (3rd Ed. 1940).

The evidence introduced by the government indicates that the Consumer money order was stolen in blank from Smith's Market in July, 1970, and was cashed at Barnes Hospital on September 20, 1970, by a man who identified himself as Matthew Gray. A government fingerprint expert also testified that the defendant's fingerprint was on the money order and a handwriting expert testified that there were "significant similarities" between the defendant's known handwriting and the endorsement on the Consumer money order (Exhibit 8). In United States v. Crawford, 438 F.2d 441 (8th Cir. 1971), this court said in footnote 14:

"If intent is an essential element of the crime, evidence of other acts similar in nature and closely related in time to those encompassed in the charge is admissible to establish intent. Von Feldt v. United States, 407 F.2d 95 (8th Cir. 1969) and cases cited therein. See, United States v. Bessesen, 433 F.2d 861 (8th Cir. 1970); Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)."

It is our judgment that the evidence concerning the Consumer money order, Exhibit 8, did tend in fact to establish the commission of an offense similar in nature to and reasonably near the time of the offenses for which the defendant

was charged. Therefore, this evidence was highly relevant in showing intent.

■ The defendant complains that claimed knowledge of the defendant that the American Express money orders were stolen was derived from his possession of the stolen and forged American Express money orders within 48 hours of their theft. Basically, this is an attack on the sufficiency of the evidence underlying the defendant's conviction. As this court has previously indicated:

"[W]e make the usual observation that this court, in considering the sufficiency of the evidence to support the verdict of guilty, must take that view of the evidence which is most favorable to the government and must accord the prosecution the benefit of all inferences which reasonably may be drawn in its favor."

Thogmartin v. United States, 313 F.2d 589, 590 (8th Cir. 1963)

■ Upon an examination of the record we believe that the evidence of the defendant's possession of the stolen money orders within 48 hours of their theft constituted sufficient evidence from which a jury properly could find that the defendant had knowledge that the money orders were stolen. Whether the possession was sufficiently recent presented a fact issue for the jury. See Cloud v. United States, 361 F.2d 627, 631 (8th Cir. 1966).

■ Admittedly the government's case against the defendant was premised upon circumstantial evidence. DeWoskin testified that 19 money orders were taken from his store on September 2, 1970. According to the testimony, the defendant on September 3, 1970, gave one of the money orders to Vonder Haar for rental on an apartment, and passed another of the money orders the next day at the Barnes Hospital. Consequently, the jury had before it evidence that the defendant had one money order, which had been stolen in blank from DeWoskin's store, in his possession within one day of that theft and a second within two days after the theft. In addition, the jury had evidence that the defendant two weeks later cashed yet another stolen money order at the Barnes Hospital. In each instance the defendant received full value for the money order, either in rent and money or money alone. Viewing this evidence as a whole, it is clear that a factual issue was raised as to the defendant's "recent" possession of stolen money orders.

■ Lastly, under the rubric of "evidentiary" errors, the defendant complains that the United States Attorney during final arguments posited the question to the jury of why Harold Shineberg was not in court.[3] That name appeared as the payor on each of the American Express money orders cashed by the defendant. According to the defendant's assessment this comment encroached upon his right not to testify by placing him in an unfavorable position with the jury because he had not explained away certain matters. In our view this question did not refer directly or indirectly to the failure of the defendant to testify in his own behalf. Instead, the intent and purpose was merely to impress the jury that the evidence introduced by the government apropos the defendant's guilty knowledge and fraudulent intent stood uncontradicted. There was no prejudice arising from the prosecutor's statement. See generally, Hunt v. United States, 231 F.2d 784 (8th Cir. 1956), and Lake v. United States, 302 F.2d 452 (8th Cir. 1962).

## V.

## ALLEGED ERRORS IN JURY INSTRUCTIONS

The defendant asserts error as to numerous portions of the court's charge,

---

3. The government's counsel argued: "My other comment is when you retire for your deliberation and you are examining the two money orders from the American Express Company, I want you to ask yourselves one question as you look at the payor line on those money orders, ask yourself where is Harold Shineberg and why isn't he in court here today testifying? Where is Harold Shineberg, he is the one man whose name has not really come up yet in this case."

including those concerning sympathy and prejudice, reasonable doubt, principals (18 U.S.C. § 2), the omission of the word "counterfeited" from the statement of essential elements, the term "on or about", knowledge, the terms "forged" and "falsely made", fingerprint and handwriting specimens, recently stolen property, circumstantial evidence, the expert witnesses, and credibility of witnesses. Complaint also is made of the court's failure to give an identity instruction and refusal to give the defendant's requested instructions 1, 2, 3, 4, 5 and 6. We have reviewed carefully the objections made by the defendant to the instructions given by the trial court and those instructions which the defendant offered but which were rejected by the trial court, and find that in each instance the claim of error is unmeritorious or the defendant failed to make a proper objection required by Rule 30 of the Federal Rules of Criminal Procedure. It cannot be said that any of the instructions complained of constituted plain error. See United States v. Dunmore, 446 F.2d 1214 (8th Cir. 1971).

■ It would serve no purpose to discuss seriatim the instructions given and not given about which complaint is made. One section of the charge deserves explicit analysis, however. It stated:

"All evidence of a witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should be considered with caution and weighed with great care. The weight, if any, to be given to the testimony of any witness is to be determined exclusively by the jury. You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. A witness is presumed to speak the truth. But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence. You should carefully scrutinize the testimony giv-

en, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or willful falsehood. If you find the presumption of truthfulness to be outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you may think it deserves. If you believe any witness testified falsely as to any material issue in this case, then you must reject that which you believe to be false, and you may reject the whole or any part of the testimony of such witness."

We believe that the judge's use of the sentence "A witness is presumed to speak the truth" was improper, but that in the circumstances of this case was not reversible error.

In United States v. Johnson, 371 F.2d 800 (3rd Cir. 1967), a similar instruction was held to be adequate cause for reversal of a conviction. On the other hand, the Second Circuit in United States v. Bilotti, 380 F.2d 649 (1967), adopted the view that "a charge of the presumption [of truthfulness] with a full explanation of how it can be over-

come is not reversible error.[4]" To us the latter position is more persuasive. While the statement that a witness is presumed to tell the truth serves no useful function and should be omitted, the district judge in the present case carefully and fully explained the many factors to be considered in weighing any witness' testimony and made it abundantly clear that the jury was at liberty to accept or reject the testimony of any witness.

## CONCLUSION

A full review of the entire record of this case discloses that the defendant's guilt was founded upon substantial evidence in a trial free of prejudicial error.

The judgment of conviction is affirmed.

---

4. In United States v. Dichiarinte, 385 F.2d 333, 339 (7th Cir. 1967), the Circuit while observing that such a presumption of truthfulness instruction was better left out made it clear that reversible error occurred because of the trial judge's comment that the jury was to determine whether government or defense witnesses were lying. A similar instruction has been held not to be within the plain error rule. See United States v. Stroble, 431 F.2d 1273, 1278 (6th Cir. 1970); United States v. Safley, 408 F.2d 603, 605 (4th Cir. 1969), cert. denied, 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772; United States v. Boone, 401 F.2d 659, 661–662 (3rd Cir. 1968), cert. denied sub. nom. Jackson v. United States, 394 U.S. 933, 89 S. Ct. 1205, 22 L.Ed.2d 463; and Marsh v. United States, 402 F.2d 457, 458 (9th Cir. 1968).