# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3320
_____

United States of America

*Plaintiff - Appellee*

v.

David L. Musk

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 11, 2013
Filed: July 2, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted David L. Musk on three counts of wire fraud under 18 U.S.C. § 1343. Musk testified at trial. After his brief direct testimony, the government cross-examined him. Musk attempted to invoke his Fifth Amendment rights. The district

court[1] ruled that the scope of the cross-examination was proper, and thus that Musk waived his rights as to the questioning. Musk appeals, asserting that his cross-examination testimony was improperly compelled. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

David L. Musk operated an investment business in Omaha. He contacted several developers in need of capital (e.g., real estate developers, movie producers), indicating his company could fund large projects. Musk told them his investors required FBI and Interpol background checks, which he would perform for $600. Based in part on these false representations, Musk was indicted on three counts of wire fraud for "having devised or intending to devise [a] scheme or artifice to defraud." **18 U.S.C. § 1343**.

At trial, Musk testified in his own defense. Before testifying, he waived his Fifth Amendment rights through a colloquy with both his counsel and the district court. The direct examination focused on Musk's representations about the background checks. He testified he did not intend to deceive anyone, and that he actually meant he completed background checks using public search engines.

On cross-examination, Musk admitted he included these representations to sound impressive to investors. The government then asked about other representations Musk made to developers, specifically whether he said that he had connections to wealthy funding sources such as Warren Buffett's Berkshire Hathaway, and members of the Walgreen and Wrigley families. Musk objected to these questions as outside the scope of direct examination and protected by the Fifth

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Amendment. The district court overruled this objection – and similar objections – several times, ruling that Musk could not waive the Fifth Amendment only as to part of the indictment. The court also ruled that the questions were proper because Musk opened the door to questioning about intent.

On several occasions, the judge contemplated ordering a mistrial, but eventually allowed the trial to proceed. After re-direct, Musk challenged the government's re-cross on the same Fifth Amendment grounds, which the district court denied. During that exchange, the district court told Musk's counsel that he could have a mistrial, but would be sanctioned with all trial costs. Musk declined to seek a mistrial.

The jury convicted Musk on all three counts. He was sentenced to 48 months' imprisonment on each count, to be served concurrently. The court also ordered restitution of $126,715.

## II.

"A court's determination of whether a witness has a valid claim for exercising the Fifth Amendment privilege against self-incrimination is highly fact-intensive. Accordingly, [this court] review[s] a district court's decision not to permit a witness to invoke his Fifth Amendment privilege for abuse of discretion." *United States v. Allmon*, 594 F.3d 981, 984-85 (8th Cir. 2010).

## A.

No person "shall be compelled in any criminal case to be a witness against himself." **U.S. Const. amend. V**. "A criminal defendant who takes the stand in his own behalf 'cannot avoid testifying fully.'" *United States v. Williams*, 87 F.3d 249, 253 (8th Cir. 1996), *quoting* *Jenkins v. Anderson*, 447 U.S. 231, 236 n.3 (1980). "By volunteering to become a witness the accused also volunteered to answer all relevant

inquires about the charge against him." **Nash v. United States**, 405 F.2d 1047, 1055 (8th Cir. 1969).

At trial, Musk initially made a knowing waiver of the Fifth Amendment. The waiver occurred on the record after an inquiry by his counsel as well as the court. At oral argument on appeal, Musk's counsel stressed that he did not want this court to decide this case based on the scope of cross-examination – but rather, that in any event, the testimony was compelled. Not so. "The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" **Mitchell v. United States**, 526 U.S. 314, 321 (1999), *quoting* **Brown v. United States**, 356 U.S. 148, 154-55 (1958). Musk may not want this case decided on that ground, but the Supreme Court demands it. The case Musk discussed with the district court, *Raffel v. United States*, 271 U.S. 494, 496-97 (1926), holds that a Fifth Amendment waiver permits all relevant testimony within the bounds of the law of evidence:

> The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge may be the basis of adverse inference, and the jury may be so instructed. His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.
>
> If, therefore, the question asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination they were proper questions, unless there is some reason of policy in the law of evidence which requires their exclusion.

The issue is whether the cross-examination here was within the proper scope. The scope of the cross-examination is largely within the district court's discretion. *United States v. Smith*, 591 F.3d 974, 981 (8th Cir. 2010). "Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." **Fed. R. Evid. 611(b)**.

On direct examination, Musk testified that when he said he would perform background checks, he was referring only to online search engines. He further testified that he included the representations about FBI and Interpol background checks in order "[t]o weed out anyone with a checkered past," in other words, "to scare them off" from seeking funding in the first place. As the district court correctly ruled, this testimony about his intent permitted cross-examination about his true intent for including the representations. On cross-examination, he admitted including them so he "sounded impressive." To support the government's theory that the representations were meant to defraud people, the prosecutor asked about other misrepresentations Musk made to developers. Specifically, the prosecutor asked about representations Musk made about connections to Berkshire Hathaway, the Walgreens, and the Wrigleys. The district court properly ruled these questions were within the scope because they helped establish that the representations about the investments were fraudulent.

Musk relies on *United States v. Crawford*, 438 F.2d 441 (8th Cir. 1971). The defendant there was accused of selling drugs to Mr. and Mrs. Parker. *Crawford*, 438 F.2d at 442-43. On direct, Crawford testified he had not met Mrs. Parker until the end of the relevant time period, and had never sold drugs to the Parkers. *Id.* at 443. On cross-examination, the prosecutor asked if Crawford knew any addicts or people convicted of drug crimes. *Id.* Crawford said he did not. *Id.* After then inquiring specifically about the Parkers, the prosecutor asked about three other individuals – completely unrelated to the case. *Id.* When Crawford confirmed he knew each one, the prosecutor asked him whether he knew about their drug crimes. *Id.*

-5-

As to the unrelated individuals, this court held that the scope of proper cross-examination was exceeded because Crawford "did not open the door to questions regarding his association with unsavory characters." *Id.* at 444. However, this court held: "The Defendant, by testifying that he had not met Mrs. Parker until September 26 and that he had never sold narcotics to her or her husband, opened himself to a searching examination of his dealings with them in narcotics." *Id.* In this case, Musk made several representations to the developers he solicited as potential clients. The representations were in the course of the same solicitations and made to the same people. When Musk testified about his intent in including some of the false representations, he opened the door to questioning relevant to his intent – including questions about other representations.

Further, Rule 611(b) permits questioning on "matters affecting the witness's credibility." **Fed. R. Evid. 611(b)**. The objected-to testimony was on matters affecting Musk's credibility because he admitted making false representations to developers. The testimony is subject to Rule 403's restriction that the probative value of the evidence not be outweighed by the risk of unfair prejudice. *See* **Fed. R. Evid. 403**. The admission of evidence is only reversible under Rule 403 for a clear and prejudicial abuse of discretion. *United States v. McCorkle*, 688 F.3d 518, 521 (8th Cir. 2012). "Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial." *United States v. Tyerman*, 701 F.3d 552, 563 (8th Cir. 2012). "If a defendant takes the stand, his credibility is placed in issue, and the Government is entitled to attack it by cross-examination. Counsel should be given wide latitude in cross-examination." *United States v. Wallace*, 722 F.2d 415, 416 (8th Cir. 1983). Musk's credibility was at issue because he took the stand. The objected-to questions concerned misrepresentations Musk made about the same investment opportunities. The district court did not err by admitting this testimony.

B.

Musk contends that his testimony was improperly compelled because the district court threatened him with economic sanctions:

> All right. Well, first of all, he waived his Fifth Amendment right when he took the stand and I understand that it's subject to what is appropriately within the scope – generally the scope of the cross-examination. I ruled that the questions by the government were within the scope of cross – within the scope of the examination and then I compelled him to testify 'cause he can't selectively choose what he wants to take the Fifth on and what he doesn't want to take the Fifth on and then I ordered him to testify accordingly.
> So if – if you want a mistrial because I did that, then I'm certainly willing to give you the mistrial but if I do that, I'm going to ask the government to tell me how much it cost them to put the case on, I'm going to figure out how much it cost us to have the jury and then I'm going to impose sanctions against you in that amount. That's – that's how it goes. So it's up to you. Whatever you want to do, Mr. Davis.

After that statement, Musk declined to seek a mistrial. He argues that this "threat" from the district court rendered his testimony involuntary.

Musk first relies on *Lefkowitz v. Turley*, 414 U.S. 70 (1973). There, architects challenged a statute that required State contractors to waive their right to testify in disputes with the State. *Turley*, 414 U.S. at 82-83. If the contractors did not comply, they were ineligible for State-contracted work. *Id.* The statute was prescriptive, and the witness was forced to testify no matter the circumstances. *Id.* The Court struck down the statute. *Id.* The crucial distinction here, however, is that the waiver occurred at trial, not before a dispute arose. Further, the proposed sanction here was related to specific acts at trial, not imposed by an arbitrary statute. The district court here was only explaining its view that sanctions would be appropriate for a mistrial. *See, e.g.*, **Hazeur v. Keller Indus.**, 983 F.2d 1061, 1993 WL 14973, at *4 (5th Cir.

-7-

Jan. 11, 1993) (per curiam) (summary calendar), *citing* **Waible v. McDonald's Corp.**, 935 F.2d 924, 926 (8th Cir. 1991). This does not rise to the level of involuntary testimony contemplated in *Turley*, and the district court's statement was not error.

In *Minnesota v. Murphy*, 465 U.S. 420 (1984), the Court held that the defendant was not deterred from claiming the privilege by a threat of probation revocation. *Murphy*, 465 U.S. at 439. In the course of the Court's discussion, it clarified the issue in "penalty cases" such as *Turley* and *Murphy*: "In each of the so-called 'penalty' cases, the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Id.* at 434, *quoting* **Lefkowitz v. Cunningham**, 431 U.S. 801, 806 (1977). This quotation demonstrates two ways Musk's testimony was not improperly compelled. First, Musk was not "compelled" to "appear and testify." He decided to testify on his own behalf, acknowledging that it opened him up to cross-examination within the rules of evidence. Second, the threat of sanctions did not "[seek] to induce him to forgo the Fifth Amendment privilege." Musk had already waived the privilege and given testimony. It was within the district court's discretion to deny the motion for mistrial, because the testimony was proper. The threat of sanctions did not coerce Musk into forfeiting his Fifth Amendment privilege – he did so voluntarily and before any discussion of sanctions.

Musk contends that the proper remedy for an improper assertion of Fifth Amendment rights is to strike the direct testimony. *See* **United States v. Baker**, 721 F.2d 647, 650 (8th Cir. 1983). *Baker* did not hold that this was the only permissible remedy, only that the district court there did not err in doing so. *Id.* In *Baker*, the testimony in question was from the president of a corporation responding to a summons to produce the company's books and records in a tax investigation. *Id.* at 649. At the hearing, Baker testified he had produced all such records. *Id.* He refused to answer any questions on cross-examination. *Id.* Here, however, there was an

explicit waiver of the Fifth Amendment. Musk testified on both direct and cross-examination. Musk was permitted to, and did, object to questions as outside the scope of direct examination. This procedure was designed to protect Musk and was first offered by his counsel:

> So what I think we should do in order to produce a record – I don't want him to take the Fifth Amendment in front of the jury anymore. I want to keep – I'll make my – interpose my objections in terms of outside the scope but I think if you outside the presence of the jury order my client to answer those prospective questions, then he's going to have to do so and I preserve my record with respect to his Fifth Amendment.

As described above, the district court properly ruled that all of the questioning was within the proper scope of cross-examination, and Musk provided testimony in response to those questions. It was within the district court's discretion to direct him to answer, and to contemplate contempt if he refused to do so. *Brown*, 356 U.S. at 152-53, 157. Musk's knowing waiver subjected him to questioning within the proper scope, and the district court properly admitted such testimony.

* * * * * * *

The judgment of the district court is affirmed.

_____