**Benjamin B. HOFFMAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15391.**

United States Court of Appeals
Ninth Circuit.

Nov. 4, 1957.

Louis B. Whitney, Paul W. LaPrade, Loretta S. Whitney, Phoenix, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., William E. Eubank, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before DENMAN, Circuit Judge, HAMLEY, Circuit Judge, and GOODMAN, District Judge.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court in a jury-tried case holding Hoffman guilty as charged on ten out of eleven counts of an indictment charging violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (fraud by interstate wire). The punishment imposed was the maximum of five years

on each count to run concurrently with the others. With such concurrency we are considering and affirming in Count XI only. That count reads as follows:

"On or about the 29th day of May, 1953 Benjamin B. Hoffman, hereinafter called the defendant, devised a scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises; that the scheme so devised was substantially as follows: The defendant used the names of two companies, the Hoffman Wholesale Grocery and the Acme Distributing Company, to place orders, outside the State and District of Arizona, on open account with various persons, firms and companies, dealing in food and food products, and in placing the said orders, the defendant represented that the Hoffman Wholesale Grocery or the Acme Distributing Company was an active and responsible business concern, within the State of Arizona, with good credit rating and that the goods ordered would be paid for promptly in full; that the aforesaid representations and promises were made to induce the persons, firms, and companies receiving them to ship their merchandise to the defendant on credit; that the defendant well knew at the time the aforesaid representations and promises were made that the Hoffman Wholesale Grocery and the Acme Distributing Company were, in fact, not active and responsible business concerns in the State of Arizona, and not possessed of a good credit rating, but in truth and in fact, said companies were dummy business organizations with only nominal assets and created by the defendant to accomplish his scheme; and that the defendant further knew that the goods ordered and shipped to the Hoffman Wholesale Grocery and the Acme Distributing Company would not be paid for promptly in full, and the defendant did not intend to pay for said food and food products received except to make token payments to induce the sellers thereof to further rely on the false representations and promises previously made; that as a further part of said scheme, the defendant converted said food and food products immediately into cash by selling the same, keeping the proceeds for his own use and benefit.

\* \* \* \* \* \*

"On or about the 29th day of May, 1953, in the District of Arizona, the defendant, Benjamin B. Hoffman, for the purpose of executing the aforesaid scheme and artifice did, by interstate wire, telephone T. L. Brice Company, Sherman, Texas, and place an order for food products, viz., pickles, to be delivered to the Hoffman Wholesale Grocery, Tucson, Arizona, and in furtherance of said scheme did make the fraudulent representations and promises as aforesaid."

■ The artifice of buying on the falsely described credit of the two dummy companies to defraud Brice by an intended non-payment in full of the credited purchase price and the immediate sale for cash to be kept for Hoffman's sole use and not for the companies' assets and the use of interstate wires for that purpose clearly violate the fraud-by-wire statute providing:

"§ 1343. Fraud by wire, radio, or television.

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C.A.

**340**

■ Count XI is one "sufficiently apprises the defendant of what he must be prepared to meet * * *." Hagner v. United States, 1932, 285 U.S. 427 at page 431, 52 S.Ct. 417, 419, 76 L.Ed. 861.

■ Appellee's brief correctly describes the proof supporting the jury's verdict. Ted R. Brice, Manager of the T. L. Brice Company, located in Sherman, Texas, received a collect telephone call from Tucson, Arizona, on May 25, 1953 from the defendant, who represented himself as Ben B. Hoffman, Wholesale Grocery, Tucson, Arizona.

The defendant inquired of Mr. Brice whether Brice had pickles for sale, the price of his pickles, and the delivery date of purchases. During this telephone conversation, the defendant made several representations and pretenses to Mr. Brice that were false and fraudulent and calculated to obtain Brice Pickles without payment, to-wit: (1) That he was Ben B. Hoffman, Ben B. Hoffman Wholesale Grocery; (2) That he wanted to purchase pickles; (3) That the terms of payment were satisfactory, "one percent 10, net eleven." Another false pretense was represented by defendant to Mr. Brice in a later telephone call, prior to shipment by Mr. Brice, when defendant represented that he was the one purchasing the James A. Dick Grocery Company, Tucson, Arizona, when such was not the fact. This representation was made by defendant upon inquiry by Mr. Brice into the defendant's credit standing.

Mr. Brice, relying upon the representations of the defendant caused the pickles listed on the invoice and bill of lading to be shipped on June 4, 1953 by his own truck from the Brice Plant at Sherman, Texas, to Tucson, Arizona, on open account. This shipment consisted of 775 cases of assorted Brice Pickles at a cost to the defendant of $2,138.75.

Defendant received this shipment in Tucson, Arizona, on June 6, 1953, and he signed receipt for the goods upon the invoice presented to him by the Brice truck driver. This signature of the defendant upon the invoice was found to be the same signature, written by the same person, as known identified signature specimens of the defendant introduced into evidence earlier in the trial.

Upon defendant's direction the merchandise was stored in the warehouse of the Tucson Transfer Co., Tucson, Arizona.

Within just five days after the receipt of these goods the defendant succeeded in selling 690 cases of Assorted Brice Pickles to Rouland Goodman, Goodman's Market, Tucson, Arizona, for $1,083.75. This sale represents a loss of $759.75 on the invoice price to the defendant.

Mr. Goodman testified that he carefully examined the pickles because "the price was kind of below normal" and that he determined the merchandise to be first-class; that he purchased the 690 cases of Brice Pickles and paid for them by his check No. 2488, dated June 12, 1953. This check has the endorsement of Ben B. Hoffman on it. It was found that this signature was written by the same person, the defendant.

After delivery of the merchandise to the defendant, and the defendant's sale of the goods at a $759.75 loss, Mr. Brice attempted to collect on the open account. He telephoned the defendant, prepaid, demanding payment as agreed upon. Brice testified, " * * * we told him to either send the money from the invoice, or we would turn it over to our attorney for collection, or pick up the merchandise." Defendant said that a check would be in the mail that evening. In a day or so after this call Mr. Brice received a check in the amount of $400.00 from the defendant. After receipt of the check, Brice again attempted to collect the balance due on the invoice price by prepaid telephone calls to the defendant. In the last phone call, Brice told the defendant, " * * * if it was not paid we would come out and pick up the merchandise and issue a credit for merchandise we picked up. * * * He (defendant) said they (merchandise) were distributed over a several hundred mile area, and he couldn't pick them up there, and he would mail a check, I think

that night, or very shortly, mail another check very shortly and at that time we gave him so many hours to mail another check in, which did not come in. Q. That check never came in? A. That is right."

After obtaining the merchandise from Mr. Brice, in this criminal manner, Brice was able to escape loss only by an attachment of some other merchandise of Hoffman. The fact that he suffered no loss other than for the time and expense of the attachment caused by the fraud, does not make the fraud any the less criminal.

The judgment on Count XI is affirmed.

GOODMAN, District Judge.

I concur.

In my opinion this appeal is devoid of merit. The evidence fully sustains the judgment of conviction on all ten counts and the judgment on all counts should be affirmed.