**UNITED STATES of America,
Appellee,**

v.

**Dinty Warmington WHITING, James R. Crowe and Walter J. Sarnitz,
Defendants-Appellants.**

**No. 264, Docket 27196.**

United States Court of Appeals
Second Circuit.

Argued March 8, 1962.

Decided Sept. 20, 1962.

---

2. "Q. Now, as a consequence of Mrs. Dege's being arrested on March the 7th of 1958, Mr. Albert Bryan has not returned to jail, has he?"

538

J. Robert Lunney, New York City, for appellant, Dinty Warmington Whiting.

Theodore Krieger, New York City (Albert J. Krieger, New York City, on the brief), for defendants-appellants, James R. Crowe and Walter J. Sarnitz.

David R. Hyde, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., So. District of New York on the brief), for appellee.

Before WATERMAN, KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by three defendants, Dinty Warmington Whiting, James R. Crowe, and Walter J. Sarnitz, from judgments of conviction entered in the United States District Court for the Southern District of New York, Metzner, J., on March 30, 1961, after a trial by jury. The three defendants were each convicted on three substantive counts (Counts I, II, and III) charging separate violations of 18 U.S.C.A. § 1343 by the sending of cables between New York and Rio de Janeiro in furtherance of a scheme to de-

fraud. They were also convicted on a fourth count (Count IV) of conspiring to send these fraudulent cables in violation of 18 U.S.C.A. § 371, the federal conspiracy statute. The defendant Whiting was sentenced to serve four years and seven months in prison on each count, the defendant Crowe to serve four years and ten months in prison on each count, and the defendant Sarnitz to serve four years and five months in prison on each count, with the sentences of each defendant to run concurrently.

Two additional defendants, Lawrence J. Kunz and Victor J. Mari, pleaded guilty to Count IV and were each sentenced to serve one year in prison. Indictments against them as to Counts I, II, and III were dismissed. At trial both men testified as Government witnesses.

■ Although the appellants make certain claims of erroneous and prejudicial rulings by the trial court, which will be considered presently, their appeal is based primarily upon the contention that the evidence presented by the Government did not fairly establish beyond a reasonable doubt their guilt of the crimes charged. We have carefully considered the record and find the evidence ample to support the judgment of the District Court. Because we find no merit to any of the other claims made by the defendants, the judgments of conviction must be affirmed.

On the basis of the evidence introduced by the Government, the jury could have found the following facts:

In August 1960 Sarnitz approached Mari and Kunz, both employees of the Bank of America-International in New York, with an offer of $125,000 for Mari and $250,000 for Kunz if they would send a cable from the Bank of America-International to the Banco do Brasil in Rio de Janeiro, using a confidential international banking cable code known only to a few employees of each bank, including Kunz. Both men accepted the offer. Meetings were held by Mari, Kunz, Sarnitz, and Crowe; Sarnitz made at least three telephone calls to Whiting in Rio de Janeiro. A cable—which originally named Whit-ing as beneficiary but later was changed to name Crowe—was drafted. Finally, on August 16, 1960, after Crowe had flown to Rio de Janeiro, Kunz transmitted over the Bank of America's wire to the Banco do Brasil the cable that forms the basis of Count I:

"WE HAVE RECEIVED PAYMENT ORDER VALUED AT US DOLLARS THREE MILLION FROM BANCO DI NAPOLI NEW YORK STOP UNDER INSTRUCTIONS OF JAMES RILEY CROWE AS BENEFICIARY THEREOF WE HEREBY TRANSFER AND CREDIT THIS PAYMENT ORDER TO YOUR ACCOUNT OR YOUR ASSIGNEE."

The message was repeated five times bearing the amount of $3,000,000. On a sixth message, the amount was changed to $5,000,000, making a total of $20,000,-000.

When the Banco do Brasil received this cable, it sent a return cable to the Bank of America requesting confirmation. Later that same day Whiting went to the office of All America Cables and Radio in Rio de Janeiro and sent to the Bank of America in New York the cable which forms the basis of Count II:

"DISREGARD AND CANCEL CABLE TODAY SATELGERAL RIO."

The term "SATELGERAL" is the cable code name for Banco do Brasil-General Management. On the line of the form requesting the name of the sender, Whiting wrote, "J. Feirrara & Cia, Av. Rio Branca 164." Both cables—the request for confirmation sent by Banco do Brasil and the "disregard and cancel" cable sent by Whiting—were given to the appropriate official in the Bank of America, but no action was taken. Sarnitz also talked to Whiting by telephone during this period.

The following day, August 17, 1960, Sarnitz received from Kunz the confidential banking test code number for that day as well as several secret cable code words; he then went to the Western Union office in the Waldorf-Astoria Ho-

tel in New York and sent to the Banco do Brasil the telegram which forms the basis of Count III:

"FIVETHREE SIX BSUUI WE CONFIRM PAYMENT ORDERS JAMES RILEY CROWE FROM AUGUST SIXTEENTH IN ALL PARTICULARS EXCEPT FINAL THREE WORDS IN ALL SIX MESSAGES QUOTE OR YOUR ASSIGNEES UNQUOTE WHICH ARE HEREBY DELETED XRUID."

The words "FIVETHREE SIX," "BSUUI," and "XRUID" were written in the secret bank code. On the line of the Western Union form requesting the name of the sender, Sarnitz wrote "Frederick Johnson, Hotel Gladstone, N. Y." When this message was received, the Banco do Brasil again sent a cable to the Bank of America requesting confirmation. Upon receipt of that cable in New York, the Bank of America began an investigation. All five defendants were subsequently arrested.

■ To sustain these convictions there must be evidence from which the jury could conclude beyond a reasonable doubt (1) that the defendants devised a scheme to defraud the banks involved by means of false representations; (2) that they caused the communications listed in the indictment to be sent in interstate or foreign commerce for the purpose of executing the fraudulent scheme; and (3) that they acted as part of an illegal conspiracy.

■ The Count I cable sent by Kunz from the Bank of America to the Banco do Brasil was clearly false and fraudulent. It was sent without the knowledge of any authorized official of the Bank of America. The Banco di Napoli had not transmitted to the Bank of America the payment orders mentioned in the cable, the Bank of America had not received the payment orders mentioned and did not intend to transfer and credit them to the Banco do Brasil, and Crowe was not a customer of the Banco di Napoli or the Bank of America. Although no money was ever paid out to the defendants by the Banco do Brasil, the fact that a scheme to defraud fails of its purpose is not a defense. Hoffman v. United States, 249 F.2d 338, 341 (9th Cir. 1957). And it should be noted that the comptroller of the Bank of America testified that in his opinion had the Banco do Brasil relied upon the Count I cable and paid out the funds, the Bank of America would have been held liable.

The Count II and Count III cables were similarly false and fraudulent. Although the Count II cable was signed by the cable code name meaning the Banco do Brasil, that Bank did not authorize its transmission and had no knowledge that it was being sent. The Count III cable, although including secret cable code words, was sent, like the Count I cable, without the knowledge or authority of the Bank of America. And neither Whiting nor Sarnitz signed his real name on the cable form line asking the name of sender. Both cables were designed to prevent an investigation by the two banks involved.

The evidence as to all three defendants is clearly sufficient as to all the constituent elements of the crimes alleged, including knowledge and intent, to sustain their convictions. There was a substantial basis in the Government's evidence from which the jury could have found that Sarnitz was directly implicated in the bribe offered to Mari and Kunz, the fabrication of the Count I cable, and the fabrication and actual sending of the Count III cable. There was also substantial basis in the Government's evidence from which the jury could have found that Crowe was a part of the conspiracy from the beginning, that he met with Sarnitz, Kunz, and Mari in New York, and that he flew to Rio de Janeiro in order to become the "beneficiary" of the conspiratorial scheme.

Although the Government's case against Whiting is not as clear as that against Sarnitz and Crowe, there is nonetheless substantial evidence from which the jury could have inferred guilt. He admitted sending the Count II cable and although he claims he did not sign the

name of the Banco do Brasil to it, the jury has resolved that contention against him. He was in telephone communication with Sarnitz during the final stages of the scheme. The complicated version of his actions in Brazil which Whiting made the basis of his defense was for the jury to accept or reject. We are satisfied that its rejection of Whiting's defense and its acceptance of the Government's version of the facts is based upon substantial evidence.

■ The defendant Whiting also contends on this appeal that it was error for the trial court to deny his successive motions, made under Rule 15 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to take the depositions of five persons residing in Brazil. Rule 15(a) provides that a court may order the taking of depositions upon a showing "that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice * * *." Although the reported cases are not extensive, they are consistent in holding that a motion made under Rule 15 is addressed to the discretion of the trial court, Heflin v. United States, 223 F.2d 371 (5th Cir. 1955); that it is to be granted only in "exceptional situations," United States v. Glessing, 11 F.R.D. 501 (D.Minn.1951); and that the moving party has the burden of demonstrating the availability of the proposed witnesses and their willingness to appear, United States v. Ausmeier, 5 F.R.D. 395 (E.D.N.Y.1946), the materiality of the testimony which it is expected they will give, United States v. Glessing, supra, and that injustice will result if the motion is denied, United States v. Grado, 154 F.Supp. 878 (W.D.Mo.1957). It is within the discretion of the trial court to deny the motion if it is made after "unexcused delay," Heflin v. United States, supra, or on the "eve of trial," United States v. Broker, 246 F.2d 328 (2nd Cir. 1957), cert. denied, 355 U.S. 837, 78 S.Ct. 63, 2 L.Ed.2d 49. The District Court was correct in holding that the motion and supplementary affidavits submitted by Whiting failed to meet these standards.

Counsel for Whiting moved on January 10, 1961 for an order authorizing the taking of the depositions of five persons residing in Brazil. Neither the motion nor the supplementary affidavit of January 18, 1961 did more than allege, in conclusory terms, the availability of the five proposed witnesses. Nor did either of these papers make a convincing showing that the anticipated testimony of the proposed witnesses would be material to any defense available to Whiting. At the hearing on the motion on January 16, 1961, counsel for Whiting pressed his contention that at least one of the proposed witnesses could give testimony relevant to the Count II cable sent from Brazil to New York, but he declined to admit or deny that Whiting sent the cable, or to indicate what form Whiting's defense to the charge involving that cable would take. Consequently, he was unable to demonstrate that the proposed testimony would be material to or would help to establish Whiting's defense or that the proposed testimony "would tend to exonerate " him. United States v. Broker, supra 246 F.2d at 329. The District Court properly characterized Whiting's papers at this stage as "vague and indefinite."

■ However, on February 14, 1961, the first day of trial, Whiting testified at a hearing on his motion for reduction of bail. During his testimony he admitted sending the Count II cable from Brazil to New York and conceded that it was in his own handwriting. His counsel then asked the court to reconsider his motion to take foreign depositions in the light of Whiting's testimony. The court noted that "Mr. Whiting testified for an hour and a half this morning and practically very little of what he said on the stand appeared in [his] papers * * * his papers nowhere give one-tenth of what he said on the stand today," even though counsel for Whiting had "known this information for two months." The court therefore denied the motion "at this time at 20 minutes after three on the opening

day of trial." Under these circumstances it is unnecessary to consider whether Whiting's testimony at the bail hearing supplied the link of materiality which was missing earlier. We think that the District Court was well within its allowable discretion in denying a motion made only after considerable delay, Heflin v. United States, supra, and on "the eve of trial," United States v. Broker, supra 246 F.2d at 329.

■ The defendant Sarnitz also asserts on this appeal that he was denied a fair trial by reason of prejudicial cross-examination concerning a prior conviction. We find this assertion without merit. Sarnitz denied upon direct examination that he had ever been convicted of a crime. Upon cross-examination, however, he admitted that he had been convicted of illegal trafficking in penicillin by a United States Military Government Court during the occupation of Austria in 1946. His contention on appeal is that this conviction was not admissible for impeachment purposes because it was not of a felony or a crime of moral turpitude. See United States v. Provoo, 215 F.2d 531 (2d Cir. 1954). But the characterization of the 1946 conviction is not relevant to the disposition of Sarnitz' claim. Sarnitz admits in his brief that because he testified on his own behalf, "he could be cross-examined for the purpose of impeaching his credibility." Even more narrowly, because Sarnitz testified on direct examination that he had never been convicted of a crime, he made his credibility on that particular issue a relevant area for cross-examination. As this Court said in United States v. Colletti, 245 F.2d 781, 782 (2d Cir. 1957):

"After testifying on direct examination that he had never been convicted of any 'crime or offense,' the government's attorney was allowed to show on his cross-examination that he had, while in the army, twice been convicted of what the appellant called 'a fight assault.' We need not determine whether this would otherwise have been proper cross-examination, see United States v. Provoo, 2 Cir., 215 F.2d 531, 536, for it was permissible in contradiction of the appellant's previous testimony on the subject of his previous good conduct which he had himself put in issue."

■ Finally, the defendants contend that the Government's summation was inflammatory and prejudicial in alluding to bribery of political officials and commenting that "if that's the way these Americans do business down in Latin American countries I think it is little wonder that we read in the papers these days of anti-American rioting in the streets down there." While we are not to be understood as sanctioning such latitudinous remarks, we do not believe that they were sufficiently prejudicial to require reversal.

We have considered the other arguments urged by the defendants and find them without merit.

We are indebted to assigned counsel for appellant Whiting for his painstaking preparation and presentation of appellant's contentions on this appeal.

Affirmed.