Ross **FURLOW**, Defendant-Appellant.

v.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

No. 80–1560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1981.

Decided May 4, 1981.

Riner E. Deglow, Spokane, Wash., for appellant.

Robert S. Linnell, Asst. U. S. Atty., Yakima, Wash., for appellee.

Before BROWNING, Chief Judge, TANG, Circuit Judge and HEMPHILL,* District Judge.

PER CURIAM:

Appellant seeks reversal and vacation of the District Court's finding of guilt at a bench trial concluded June 20, 1980, and the subsequent sentence and judgment. He argues thirteen reasons/errors in this Court which on consideration should be narrowed to five for processing in this forum.

* Honorable Robert W. Hemphill, Senior Judge, United States District Court for the District of South Carolina, sitting by designation.

■ Appellant attacks the evidence as inadequate to support his conviction. This Court uses the guidelines it previously set forth in *United States v. Lincoln*, 494 F.2d 833, 840 (9th Cir. 1974):

> When determining the sufficiency of the evidence to sustain a conviction, the evidence must be taken in a light most favorable to the Government * * * The reviewing court must assume that the trier of facts resolved all matters of credibility of witnesses, evidentiary conflicts, and drew all reasonable inferences from proven facts in a manner which would support the verdict. *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969).

Appellant was indicted for violation of 18 U.S.C. § 495, in two counts, possession of, and uttering, with intent to defraud the United States, a United States treasury check issued to Wilfred E. Peatross. The evidence revealed, among other salient facts, that defendant presented the questioned check for cashing, November 14, 1978, at the Pacific National Bank in Yakima, Washington. He later deposited a portion of the check in a savings account at Rainier National Bank, where his handwriting appears on a deposit slip and a signature card. He lived at the check address where the payee no longer lived; payee had not authorized the interception, possession, or use of the check by defendant. The evidence is more than sufficient to support the verdict and finding. *Cf., Lustiger v. United States*, 386 F.2d 132 (9th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968); *United States v. Stein*, 500 F.2d 678 (9th Cir. 1974) and *United States v. Hawkins*, 614 F.2d 85 (5th Cir. 1980), *cert. denied*, 446 U.S. 955, 100 S.Ct. 2926, 64 L.Ed.2d 814 (1980) [evidence held sufficient to sustain certain convictions under mail fraud statute].

1. Rule 15(a) provides:
  Rule 15. DEPOSITIONS
  (a) WHEN TAKEN. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book,

■ A second series of errors is urged on the court in the taking and using of the testimony procured by a deposition of Wilfred Peatross, owner/payee of the check, in St. Louis, Missouri, pursuant to Rule 15(a), Federal Rules of Criminal Procedure.[1] The district judge, finding exceptional circumstances to exist and the deposition in the interest of justice, on June 9, 1980, ordered the deposition for June 13, 1980, secured defendant in the processing thereof by issuing a Writ of Habeas Corpus to the Sheriff of Yakima County (where appellant was in state custody) to have appellant present during the deposition, and, because of the absence of appointed counsel on active military duty, appointed J. Adam Moore, Esquire, whom the court found competent for the purpose, to represent appellant at the deposition. It appears that Moore and a deputy United States Marshal met with Furlow, who was tendered expenses for purpose of attending but chose not to attend. He now makes serious objections to the use of the deposition.

This Court finds no error. The record reveals he was notified and a series of provisions and precautions were employed to give him due process. He was released from state custody for the purpose of attending. Rule 15(b) specifically treats a situation of this nature:

Rule 15(b). NOTICE OF TAKING.

> ... A defendant not in custody shall have the right to be present at the examination upon request subject to such terms as may be fixed by the court, but his failure, absent good cause shown, to appear after notice and tender of expenses in accordance with subdivision (c) of this rule shall constitute a waiver of that

paper, document, record, recording, or other material not privileged, be produced at the same time and place. If a witness is committed for failure to give bail to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness.

right and of any objection to the taking and use of the deposition based upon that right.

Peatross was ill and the purpose of taking his testimony was to preserve it and have it for trial, which is within the contemplation of the Rule. *United States v. Rich*, 580 F.2d 929, 933–34 (9th Cir. 1978), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331. Apparently Peatross was under VA disability and appellant made no contest as to his inability to attend trial. Whether to grant or deny a motion to depose a proposed witness in a criminal trial is discretionary. *United States v. Richardson*, 588 F.2d 1235 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636, 441 U.S. 931, 99 S.Ct. 2049, 60 L.Ed.2d 658; *see also, United States v. Mann*, 590 F.2d 361 (1st Cir. 1978); *United States v. Whiting*, 308 F.2d 537 (2d Cir. 1962), *cert. denied*, 372 U.S. 909, 83 S.Ct. 722, 9 L.Ed.2d 718. There appears no abuse of the vested discretion of the district court in the application of Rule 15 here.

Appellant presents as error a composite of complaints surrounding the taking of the deposition, all of which represent technicalities, and none of which reach constitutional dimension or serve to deprive appellant of the safeguards of the criminal rules. Appellant was provided, at taxpayer's expense, (1) a right of confrontation; (2) effective representation; (3) sufficient notice, and (4) the opportunity to test the credibility of Peatross. He refused, and chose to ignore. This Court cannot condone the conscious misuse of technicalities to impede the regular processes of the court. This Court is mindful of the warnings dictated by Mr. Justice Cardozo in *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 687 (1934), [defendant was not present when jury taken to the scene of the crime]:

> There is danger that the criminal law will be brought into contempt . . . if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to the local law, and set the guilty free.

The taking/use of the deposition presents no reversible error.

■■■ This Court groups as meritless a complaint concerning the police report, not a part of the government's file and so neither discoverable under Rule 16 nor advantageous under *Brady*,[2] which was, when discovered, made available for overnight study by appellant's counsel and use in cross-examination, resulting in no prejudice. Nor does this Court find prejudice in identification by witness Kelly *before* arrest, and the voluntary giving of handwriting samples and fingerprints before any custodial act on the part of the investigators.

Almost novel to this Court is the speedy trial question, cast in a cloud of volcanic dust (literal) occasioned by the eruption of Mt. St. Helens, a volcano of western Washington, an incident/accident of worldwide significance and paralyzing impact on surrounding geographies, including the location of the court [3] where the appellant was scheduled for trial. A close reading of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, reveals no reference to the interruptions of nature. This Court is reminded that "Laws cannot prevent accidents nor can a law equally protect all against them."[4]

Appellant charged with two counts of violation of 18 U.S.C. § 495, was indicted October 1, 1979, was not apprehended until February 22, 1980, in Virginia and returned to Yakima on or about March 3, 1980. He was arraigned before the United States Magistrate on March 12, 1980. A trial was scheduled for May 20, 1980,[5] was prevented by the eruption of May 18, 1980, which obviously interrupted transportation, communication, etc. [affecting the abilities of jurors, witnesses, counsel, officials to attend

---

**2.** *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**3.** Yakima is specifically designated by 28 U.S.C. § 128.

**4.** *Louisiana v. Resweber*, 329 U.S. 459, 465, 67 S.Ct. 374, 377, 91 L.Ed. 422, 427 (1947).

**5.** Within the ninety day time frame of the Speedy Trial Act.

the trial]. The trial was postponed, rescheduled and commenced June 17, 1980.

■ The Speedy Trial Act, 18 U.S.C. § 3164, requires that a "detained person who is being held in detention solely because he is awaiting trial" shall be brought to trial not more than 90 days after the beginning of detention. Appellant calculates that 116 days elapsed between his arrest in Virginia on February 22 and the start of trial on June 17. However, appellant concedes he was released from custody by the U. S. Magistrate on May 13, within the 90-day period. The fact that he was then reincarcerated "on other charges not related by the City of Yakima" has no effect on the applicability of § 3164. At that point appellant was no longer being detained "solely because he [was] awaiting trial" on the federal charge.

■ The Act, 18 U.S.C. § 3161(c)(1), also requires that a defendant be brought to trial within 70 days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*" (emphasis added). The 70-day period therefore began to run when appellant was arraigned on March 12. The last day the trial could have begun within the time limit was May 21. However, appellant filed a Motion to Dismiss for want of prosecution on April 24, which was denied by Order of the trial court on May 5. In that Order the trial judge found the period between the filing of the motion and its determination by him to be excludable time under 18 U.S.C. § 3161(h)(1)(F). This ruling was clearly correct; the statute excludes the time "from the filing of the motion through the

conclusion of hearing on, or other prompt disposition of, such motion."

■ These 12 days of excluded time moved the last possible date of the trial back to June 2. However, Mt. St. Helens erupted on May 18. After rescheduling the trial, the court by Order found the period from June 4 through June 17 to be excludable time because of the emergency. It appears the court may have erred in not including the dates of June 2 and 3 within its Order, because the time from March 12, through June 17, less the time encompassed in the two exclusion orders, is 72 rather than 70 days. It is clear, however, that the court's intention was to exclude the delay caused by the eruption. If a typographical or computational error resulted in the failure of the Order fully to carry out this intention, the clarity of the intention is controlling.

The issue before us, therefore, is whether the second exclusion Order was justified. In the existing climate of events the trial court, charged with the certain indispensable duty conducting a fair trial, applied its judgment on the application of 18 U.S.C. § 3161(h)(8)(A).[6] The court found:

\* \* \* \* \* \*

the ends of justice are best served by ordering this excludable time [June 4–17] and the resulting delay until the presently pending trial date of June 17, 1980. The reason therefor is that the state of emergency prohibited the trial to proceed; the defendant has been at liberty all during the period involved and the ends of justice served by this continuance outweigh the best interest of the public and the defendant in a speedy trial.

This Court is quick to pay homage to the Sixth Amendment to the Constitution of

---

**6.** 18 U.S.C. § 3161(h)(8)(A) provides:

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No

such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

the United States and its implementation, The Speedy Trial Act. Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important. But the record here contains an acknowledgement of the appreciable difficulty expected with an incident/accident of earth-shaking effect, although the various impacts are not detailed.

The case at bar is clearly distinguishable from *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) where the state process there under attack "allows state prosecuting officials to put a person under the cloud of an unliquidated criminal charge for an indeterminate period [and thus] violates the requirement of fundamental fairness assured by the Due Process Clause ...".[7] No such shadowy process exists here. Within the limits of the Sixth Amendment and the Speedy Trial Act a district court has inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion. The district court preserved the procedural safeguards and specified a trial date rather than a *sine die* continuance. *United States v. Didier*, 542 F.2d 1182, 1189 (2d Cir. 1976). Distinguishable is *United States v. Tirasso*, 532 F.2d 1298 (9th Cir. 1976) where this court released from *custody* two defendants held without bail longer than the 90 day period defined.

To determine whether Furlow was denied a speedy trial this Court has considered the cause of the delay, the length of the delay, the judgment of the trial court as expressed in its order, Furlow's assertion of his rights and what prejudice resulted. The relatively brief delays do not rise to the level of presumptive prejudice. *See United States v. Metz*, 608 F.2d 147, 152 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980). This Court finds no violation of the Speedy Trial Act.

The judgment is affirmed.

---

7. 386 U.S. at 226–27, 87 S.Ct. at 995 (concurring opinion of Mr. Justice Harlan).