134 F.3d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United STATES of America, Plaintiff-Appellee,
v.
OGHENERHO OMENE, a/k/a Harlims Oghenerho Omene; a/k/a Greg
Hotep; a/k/a Harlims Roosevelt Omene; a/k/a
Wilson Omene; a/k/a Imoyin Omene;
a/k/a Wilson Imoyin Omene,
Defendant-Appellant.
 No. 96-01359.
 United States Court of Appeals, Ninth Circuit.
 Jan. 28, 1998.
 
 Saundra B. Armstrong, District Judge, Presiding
 Before: THOMAS and TASHIMA, Circuit Judges, and SEDWICK,**District Judge
 MEMORANDUM*
 INTRODUCTION
 Oghenerho Omene ("Omene") raised suspicions at the Internal Revenue Service ("IRS") office in Hayward, California, by filing, as a tax preparer, tax returns with unusual similarities. An IRS investigation resulted in the identification of 302 tax returns that appeared to be part of a scheme to file false returns. After his arrest, Omene admitted that he had filed a large number of tax returns while doing business as Ancient One and Rapid Return Service.
 One month before trial, Omene moved, pursuant to Fed.R.Crim.P. 15, to take three depositions in Nigeria. The motion, which was renewed at trial, was denied. At trial the government called 16 witnesses and introduced hundreds of exhibits, including the 302 tax returns and numerous other documents linking Omene to the filing of false returns and the receipt of fraudulently obtained refunds. Near the conclusion of the government's case, counsel for Omene informed the court that his client's intention to testify posed an ethical problem and asked to discuss the matter ex parte.
 The next morning Omene and his attorney met with the judge. Explaining that he had an "overwhelming" belief his client would give perjurious testimony, defense counsel asked to withdraw. He advised the court that he could not explain further without disclosing confidential communications, although he also stated that Omene had not changed his story during the course of the representation. Counsel indicated that he was caught in a quandary between his obligation to assist his client and his ethical responsibilities as a lawyer. He also stated that even if the motion were granted, the problem would persist. The district judge denied the motion to withdraw on the grounds that the defendant's rights to testify and to the assistance of counsel do not extend to giving false testimony with the aid of counsel, the interests of justice in continuing with a trial which had all but reached the conclusion of the government's case weighed against withdrawal, and there was a means of accommodating Omene's desire to testify by allowing him to give his testimony in narrative form as to those aspects which counsel felt would be perjurious while counsel continued to assist Omene in all other respects.
 After denying the motion to withdraw, the district judge explained to Omene that he had an absolute right to testify, but should consider carefully his lawyer's advice not to do so. She explained that if Omene did not testify no inference could be drawn from that fact, but that if he did testify, the jury might draw negative inferences from what he said, or did not say. She advised Omene that his testimony would be largely in narrative form, and that the jury might or might not draw a negative inference from that mode of presentation. She also advised him that his lawyer would continue to represent him, but would not be able to argue evidence which the lawyer did not believe to be true. Professing to understand everything the judge told him, Omene expressed a desire to testify.
 At trial Omene testified in narrative form. His testimony indicated that he set up a Nevada corporation named Ancient One International, Inc. intending to go into the import/export business with his brother Wilson Omene ("Wilson"), a resident of Lagos, Nigeria. To generate income for the import/export business, Omene testified, Ancient One was used as a tax preparation business. Omene explained that the tax preparation business would prepare the tax return and offer the customer a discounted refund amount in advance in exchange for the assignment of the refund check to be issued by the IRS. Neither Omene nor his brother knew anything about preparing tax returns, so Greg Hotep and Matthew Edema, two men living in Nigeria who had experience in filling out tax returns, were recruited to help in the business. Because advertising the business in California received marginal results, solicitation of clients was turned over to the three men in Nigeria, who obtained more than 300 customers. Omene told the jury that Hotep and Edema sent him blank, but signed, tax returns, along with the relevant information to be included on the tax return. Omene filled in the returns with the information provided and filed them with the IRS. Omene testified that he would pick up the refund checks, which were typically sent to post office boxes opened by Omene and send them to Lagos, New York or England for endorsement by the taxpayers as instructed by Hotep and Edema. Some of the endorsed checks would then be returned to Omene to be deposited into checking accounts opened in California by Omene.
 he jury did not believe Omene. It convicted him on numerous counts of filing false tax returns in violation of 18 U.S.C. § 287 and making false representations regarding social security numbers in violation of 42 U.S.C. § 408. The jury was not alone in finding that Omene lied. In her statement of reasons for Omene's sentence, the district court wrote that:
 The Court finds that the defendant repeatedly provided false testimony, under oath, during the course of the trial. This false testimony included the defendant's assertion that he was acting on behalf of persons in Nigeria, that he believed that the tax returns were genuine, and that he did not sign the endorsements on the refund checks. In addition to this false alibi, much of defendant's other testimony was clearly false. It is apparent to the Court that the defendant intentionally testified falsely in an attempt to mislead the jury.
 (ER 161).
 On appeal, Omene contends that the district court erred by denying his Rule 15 motions. He also asserts that he was denied his right to effective assistance of counsel.
 RULE 15 MOTIONS
 Hoping to corroborate his account of events, one month before trial Omene moved, pursuant to Fed.R.Crim.P. 15, to take the depositions of Wilson, Hotep, and Edema in Nigeria. Attached as an exhibit to the motion was a report from a defense investigator detailing a telephone conversation he had with a person who claimed to be Wilson. The district court denied the motion in a written decision on April 23, 1996, finding that Omene had not presented sufficient evidence to establish that the person who identified himself to the defense investigator was Wilson; there was no reason to believe that the individual would be available in Lagos, to be deposed; it "appear[ed] unlikely" that the individual's testimony would be material since he stated to the investigator that he lacked personal knowledge of the dayto-day operations of the tax preparation business; based on evidence presented by the government the State Department advised that travel to Nigeria could be dangerous; and the motion was not timely because Omene filed it only one month before trial when he knew, at least a year in advance, that the testimony of Wilson, Hotep and Edema would be relevant to his defense. During trial the district court denied Omene's renewed Rule 15 motion.
 Federal Rule of Criminal Procedure 15(a) provides in pertinent part:
 Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place.
 Fed.R.Crim.P. 15(a). "Whether to grant or deny a motion to depose a proposed witness in a criminal trial is discretionary." Furlow v. United States, 644 F.2d 764, 767 (9th Cir.1981). "The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." United States v. Farfan-Carreon, 935 F.2d 678, 679 (5th Cir.1991). The district court's denial of Omene's motions to take depositions in Nigeria, pursuant to Fed.R.Crim.P. 15(a), is reviewed for abuse of discretion. United States. Hernandez-Escarsega, 886 F.2d 1560, 1569 (9th Cir.1989).
 Omene argues that the district judge abused her discretion when she denied his Rule 15 motions. Omene says two primary factors guide a trial court's determination whether the exceptional circumstances contemplated by Rule 15(a) exist: witness unavailability and the offer of material testimony. Omene confuses the prerequisites for taking a deposition under Rule 15 with the prerequisites for admitting a deposition into evidence. See United States v. Sines, 761 F.2d 1434, 1439 (9th Cir.1985). Rule 15(a) does not require any conclusive showing of "unavailability" or "material testimony" before a deposition can be taken in a criminal case. Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial. Fed.R.Crim.P. 15(a).
 
 
 1
 Here, the district judge correctly focused on the fact that sufficient evidence was not presented to demonstrate that the individual who spoke to the investigator was Wilson. The district court stated that the identity of this individual "is crucial given the government's assertion that part of the evidence in this case is a driver's license in the name of Wilson Orene that bears the defendant's photograph and fingerprint." Further, in its written order on April 23, 1996, the district court stated:
 
 
 2
 If by May 1, 1996, any of these three proposed deponents appear at the American Embassy in Lagos, Nigeria with proper identification papers that can be validated by the appropriate Nigerian authorities, the Court is receptive to reconsideration of this matter.
 
 
 3
 As late as the time when Omene renewed his Rule 15 motion, no one had appeared at the American Embassy in Lagos to identify himself as Wilson, Hotep or Edema. In these circumstances, we do not find that the district court judge abused her discretion in denying the Rule 15 motions.
 
 ASSISTANCE OF COUNSEL
 
 4
 Omene argues that he was denied his Sixth Amendment right to effective assistance of counsel when the district court forced him to choose between not testifying and testifying in narrative form. This court reviews questions of constitutional law de novo. United States v. Ward, 989 F.2d 1015, 1017 (9th Cir.1992).
 
 
 5
 Omene relies on United States ex rel. Wilcox v. Johnson, 555 F.2d 115 (3d Cir.1977). In Wilcox the Third Circuit affirmed issuance of a writ of habeas corpus based upon the proposition that Wilcox had been denied his constitutional right to counsel at his second trial in a Pennsylvania state court. Wilcox testified at his first trial that he had been elsewhere when the rape with which he was charged had been committed. At the second trial, his attorney, wishing to rely on a defense of consent, threatened to withdraw if Wilcox chose to testify. The state court judge ruled that if Wilcox chose to testify, his counsel would be allowed to withdraw, and he would have to proceed without an attorney. Wilcox elected not to testify and was convicted. The choice forced upon Wilcox, "was an impermissible infringement upon the appellee's right to testify and his Sixth Amendment right to counsel." Id. at 120. Wilcox is distinguishable; Omene did testify and he did have the assistance of counsel as to all matters other than that portion of his testimony given in narrative form; in addition, there was no finding that what Wilcox would have said was false, while here, the trial judge found at the sentencing hearing that Omene's testimony was false.
 
 
 6
 The government relies on Nix v. Whiteside, 475 U.S. 157 (1986). There, the Court addressed a habeas petition related to Emmanuel Whiteside's conviction for the murder of Calvin Love. At trial, Whiteside testified that he stabbed Love in selfdefense, but at the insistence of his lawyer, Gary Robinson, he did not testify that he saw a gun in Love's possession before stabbing Love. Following his conviction, Whiteside moved for a new trial, claiming that he had been deprived of a fair trial by Robinson's admonitions not to testify that he saw a gun or "something metallic." Before addressing the motion for a new trial, the trial court heard testimony from Whiteside and his attorney. Robinson explained to the court that until shortly before trial Whiteside had consistently indicated that he saw no gun. When Whiteside changed his story and indicated that he would testify that he saw "something metallic," Robinson told him:
 
 
 7
 [W]e could not allow him to [testify falsely] because that would be perjury, and as officers of the court we would be suborning perjury if we allowed him to do it; ... I advised him that if he did do that it would be my duty to advise the Court of what he was doing and that I felt he was committing perjury; also, that I probably would be allowed to attempt to impeach that particular testimony." App. to Pet. for Cer. A-85. Id. at 161. Robinson also indicated that he would seek to withdraw if Whiteside insisted on committing perjury. The trial court denied the motion for a new trial and made specific findings that the facts were as related by the attorney.
 
 
 8
 In his habeas petition, Whiteside claimed that his right to counsel and to testify had been violated because, although he took the stand, his attorney had coerced him not to testify that he had seen a gun in Love's hand before stabbing him. The Supreme Court held that defense counsel's refusal to permit the defendant to testify in a manner the attorney knew to be false, based upon the defendant's own statements, did not constitute ineffective assistance of counsel. The Court wrote:
 
 
 9
 Robinson's admonitions to his client can in no sense be said to have forced respondent into an impermissible choice between his right to counsel and his right to testify as he proposed for there was no permissible choice to testify falsely. For defense counsel to take steps to persuade a criminal defendant to testify truthfully, or to withdraw, deprives the defendant of neither his right to counsel nor the right to testify truthfully. In United States v. Havens, supra, we made clear that "when defendants testify, they must testify truthfully or suffer the consequences." When an accused proposes to resort to perjury ... one consequence is the risk of withdrawal of counsel.
 
 
 10
 On this record, the accused enjoyed continued representation within the bounds of reasonable professional conduct and did in fact exercise his right to testify; at most he was denied the right to have the assistance of counsel in the presentation of false testimony.
 
 
 11
 Id. at 173-174 (citation omitted).
 
 
 12
 Omene seeks to distinguish Whiteside because defense counsel in Whiteside knew, based on the defendant's own statements, that the testimony the defendant intended to offer was false. Omene's counsel did not reveal to the judge the basis for his conclusion that Omene's testimony would be a fabrication, but he did say it was not based upon a change in Omene's story. While we are concerned that Omene's counsel did not lay out a firm factual basis for his position, we conclude that this case is, nevertheless, covered by the reasoning in Whiteside. Here, as there, the trial court made a specific finding after the trial that the testimony defense counsel had concluded would be perjurious was. In Whiteside the finding was made at a hearing on a motion for new trial. Here, the finding was made at the sentencing hearing. The consequence of the finding in both cases is the same. The loss of counsel's assistance was the loss of aid in presenting perjured testimony. Omene, like Whiteside, had no right to present perjured testimony.
 
 
 13
 It is true that Omenen actually did present his perjury to the jury and in doing so he may have worsened his prospects for acquittal. However, that risk was clearly explained to him by the trial court during the ex parte hearing. When an accused presents perjured testimony to the jury, one of the risks he assumes is that the jury will draw negative inferences from his perfidy. Armed with the trial court's finding at the sentencing hearing, it is clear to us that Omene was not put to a choice between permissible testimony and effective assistance of counsel. Rather, it is clear from this vantage that Omenen was afforded effective assistance of counsel, but spurned it by choosing to commit perjury.
 
 
 14
 AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3