UNITED STATES of America,

v.

Stefan BUCK, Defendant.

13 Cr. 0282 (VM)

United States District Court,
S.D. New York.

Signed 09/05/2017

Daniel Walter Levy, David Benton Massey, Jason Harris Cowley, U.S. Attorney's Office (St Andw's), SDNY, New York, NY, for United States of America.

Thomas Waldron Ostrander, Duane Morris LLP, Philadelphia, PA, for Defendant.

**DECISION AND ORDER**

VICTOR MARRERO, United States District Judge.

Defendant Stefan Buck ("Buck") moves to obtain testimony from foreign witnesses for use at trial in this case. ("Motion," Dkt. Nos. 69, 70.) Having reviewed the parties' submissions and for the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND [1]

Buck is a citizen and resident of Switzerland who, on or about June 2007, began working as a client-facing relationship manager at Swiss Bank No. 1, also known as Bank Frey. Buck later became the head of Bank Frey's private banking and eventually was named to the institution's three-person executive board.

On April 16, 2013, the Government filed the Indictment charging Buck and one co-defendant, Edgar Paltzer ("Paltzer," together with Buck, "Defendants"), with defrauding the United States in connection with actions taken during the course of their employment at Swiss Bank No. 1. The Indictment alleges that, from about 2007 to 2012, Buck willfully and knowingly

---

1. The factual summary that follows derives from the Indictment filed in this case. (see "Indictment," Dkt. No. 1.) Except where specifically referenced, no further citation to the Indictment will be made.

participated in a scheme with Paltzer and United States taxpayers to attempt to evade or defeat United States income tax obligations, in violation of 27 U.S.C. Section 7201, and to prepare tax returns, statements, and other documents made under penalties of perjury that Buck and his co-conspirators "did not believe to be true and correct as to every material matter," in violation of 26 U.S.C. Section 7206(1).

Buck then moved to dismiss the Indictment (see Dkt. Nos. 59, 60), which this Court denied on August 28, 2017. (See Dkt. No. 75.) In light of Buck's upcoming trial on October 10, 2017 (see Dkt. No. 65), Buck now brings this Motion requesting that: (1) this Court order the Government to grant safe passage to certain defense witnesses currently located in Switzerland; or, in the alternative, (2) this Court order that these defense witnesses be allowed to testify at trial via live two-way videoconferencing. (See Motion.) Additionally, Buck requests oral argument on this Motion. Buck argues that the order he requests would be appropriate because: (1) the Government has an obligation in assisting the defense in securing potential witnesses; (2) failure to provide safe passage to these defense witnesses would deprive Buck of his due process rights; (3) depositions pursuant to Rule 15 of the Federal Rules of Criminal Procedure ("Rule 15") are not an adequate alternative, as any such depositions would likely be prohibited under Swiss law; and (4) if safe passage is not granted, extraordinary circumstances in this case justify the allowance of testimony via live two-way videoconferencing. Counsel for Buck, Marc Agnifilo, submitted a declaration in support of the Motion. ("Agnifilo Declaration," see Dkt. No. 69–1.) The Agnifilo Declaration describes in general terms the defense witnesses who are the subject of the Motion and the testimony Buck anticipates they will provide. (See id.) Specifically, the witnesses are all for-

mer employees of Bank Frey who, Buck asserts, will testify to Bank Frey's policies regarding providing tax advice to United States clients and state that Buck was advised by them and others that his conduct was lawful under both Swiss and United States law. (See Agnifilo Declaration, ¶¶ 5, 6, 8.)

The Government opposes Buck's Motion, arguing that: (1) there is no precedent supporting Buck's extraordinary request that this Court order the Government to grant safe passage to these unidentified defense witnesses; (2) even if the Government were to provide safe passage, any of these defense witnesses would likely invoke the Fifth Amendment, preventing them from providing any meaningful testimony; (3) Buck has not shown that the proposed witnesses are truly unavailable and would provide material testimony such that testimony using live two-way videoconferencing would be warranted; (4) the Swiss government is unlikely to assist in securing any two-way videoconferencing testimony, making this solution unfeasible; and (5) to the extent that any of Buck's witnesses are Swiss citizens, they will not be subject to extradition or perjury charges and any two-way videoconference testimony would likely be unreliable. ("Opposition," see Dkt. No. 72.)

Buck's reply in support of his Motion proposes a modification to Buck's request, asking that: (1) the Government agree not to charge any "former Bank Frey witness" between August 28, 2017 and the date when these witnesses return to his or her home country, and (2) the Government agree to "not obstruct the safe passage of any defense witness against whom no charges have been filed." ("Reply," Dkt. No. 76.) If the Government agrees to these two conditions, then Buck will provide the Government with the names of the witnesses, and if any of those witnesses con-

tinue to refuse to travel, Buck will then seek Rule 15 depositions of them. (See id.)

Buck also argues in his Reply that: (1) if live two-way videoconferencing testimony is required, Buck will provide this Court and the Government with the names of these defense witnesses at issue and the summary of their material testimony; (2) the defense witnesses at issue here are only former employees of Bank Frey; (3) Buck is merely requesting that the Government commit "not to arrest, detain or charge defense witnesses solely because they have agreed to be defense witnesses," not safe passage for individuals already indicted; and (4) Buck will resort to obtaining videotaped deposition testimony if live testimony cannot be secured. (See id.)

## II. DISCUSSION

### A. COMPELLING THE GOVERNMENT TO GRANT SAFE PASSAGE

██ Buck's extraordinary request that this Court interfere with the Government's authority and prosecutorial discretion by compelling the Government to provide a number of unidentified witnesses with safe passage is not supported by any identifiable precedent. Courts have repeatedly recognized that they "should not order the Government to provide a guarantee of safe passage to a witness." United States v. Pham, No. 12–cr–423, 2015 WL 7871348, at *3 (S.D.N.Y. Dec. 4, 2015)(citing United States v. Abu Ghayth, No. 98–cr–1023, 2014 WL 144653, at *3 (S.D.N.Y. Jan. 15, 2014)). Whether to grant safe passage is "a decision for the Government to make" that courts should not "second-guess." United States v. Mostafa, 14 F.Supp.3d 515, 524 (S.D.N.Y. 2014).

In support of his request, Buck cites to a handful of cases that do not address Buck's specific request here of a guarantee of safe passage. See Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)(case regarding whether failure to disclose certain evidence was a Brady violation); Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)(case relating to whether a defendant was entitled certain state files); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)(striking a state law that prohibited a defendant from calling any co-participants in the same crime as witnesses).

Buck's argument that failure to provide these defense witnesses safe passage would impair his rights to due process is similarly unavailing. The Government is not preventing Buck from calling these witnesses or utilizing Rule 15 depositions to secure videotaped deposition testimony from these witnesses. The Court finds that the question as to whether to provide safe passage is a decision that the Government alone can make, and, as such, any order compelling the Government to provide such safe passage would be inappropriate.

### B. PERMITTING TESTIMONY VIA LIVE TWO–WAY VIDEOCONFERENCING

██ While "[c]losed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness ... [u]pon a finding of exceptional circumstances ... a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." United States v. Gigante, 166 F.3d 75, 81 (2d Cir. 1999). Courts have applied the same standard used regarding Rule 15 depositions when evaluating whether to permit testimony via close-circuit television ("CCTV"), and allow such testimony "only when (1) the witness's testimony is material; (2) the [movant] has made good-faith and reasonable efforts to obtain the witness's presence and is unable

to do so (that is, that the witness is 'unavailable' within the meaning of the case law); and (3) allowing testimony by such means furthers the interests of justice." United States v. Mostafa, 14 F.Supp.3d 515, 521 (S.D.N.Y. 2014).

 As with Rule 15 depositions, to show that a witness is unavailable a movant must have "made a good-faith effort to produce the person to testify at trial." United States v. Johnpoll, 739 F.2d 702, 709 (2d Cir. 1984). "A movant must provide specific reasons for a witness's unavailability." Pham, 2015 WL 7871348 at *1. "Conclusory statements of unavailability ... are insufficient" to meet this standard. United States v. Chusid, No. 00-CR-0263, 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000) (citing United States v. Whiting, 308 F.2d 537, 541 (2d Cir. 1962)). Testimony is material if it is "highly relevant to a central issue in the case." United States v. Vilar, 568 F.Supp.2d 429, 440 (S.D.N.Y. 2008). While a movant is not required to "produce affidavits from the witnesses as to their proposed testimony," the movant "must alert the district court to the substance of the evidence that is at peril of being excluded." Id. Furthermore, the testimony must "challenge central aspects of the government's allegations." United States v. Grossman, No. 03-cr-1156, 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005).

Buck has not met the burden required to show that CCTV testimony is warranted here. Buck has failed to show, at this stage, that the proposed defense witnesses are truly unavailable. Courts do assume a witness is unavailable where "a witness justifiably fears being arrested in the United States[.]" Pham, 2015 WL 7871348, at *3. However, Buck has just generically described the witnesses at issue here as current and former employees of Bank Frey instead of identifying specific witnesses, making it impossible for the Court

to determine whether these individuals do have a justifiable fear of arrest. On the current record, the Court cannot find that these proposed witnesses are unavailable.

 Even if these witnesses do have a well-founded fear of arrest in the United States and, as such, are unavailable, Buck has not shown that their testimony is material. Buck contends that these witnesses will testify to Bank Frey's policies, and that Buck was advised by them that his conduct was legal under United States and Swiss law. However, to the extent that Buck's actions were in full compliance with Bank Frey policy, that does not negate Buck's alleged intent to assist United States taxpayers to evade their tax obligations under United States law.

As to testimony regarding legal advice Buck received, Buck could introduce this same evidence by testifying himself. In fact, while the Court need not reach the potential admissibility of any witnesses' testimony, as Buck himself likely could provide this same evidence, any testimony about what advice Buck was given by other witnesses may be cumulative. See, e.g., United States v. Wilson, 11 F.3d 346, 354 (2d Cir. 1993)(witness testimony "would be cumulative, given that [the defendant] could have called any number of witnesses, including himself," to provide the same testimony). The Court is not persuaded that the witnesses at issue here would provide material evidence sufficient to allow testimony via videoconferencing.

Finally, there are significant questions regarding the feasibility and the reliability of live videoconferencing testimony in this case that counsel against granting Buck's Motion. The treaty between the United States and Switzerland regarding Mutual Assistance in Criminal Matters disclaims assistance in any matters concerning tax law violations like those Buck is charged with. Treaty Signed at Bern May 25, 1973,

T.I.A.S. No. 8302, 27 U.S. T. 2019, Art. 2(1) (c)(5) (Jan. 23, 1977) (stating that the treat does not apply to violations regarding "taxes, customs duties, governmental monopoly charges or exchange control regulations[.]"). Thus, even if the Court were to order CCTV testimony, it is unclear to what extent the Swiss government would assist in facilitating said testimony. Curiously, Buck acknowledges in his Motion when discussing Rule 15 depositions that Swiss law "prohibits official acts on Swiss soil on behalf of a foreign state, and would almost certainly include a proceeding connected to a United States criminal trial attended by prosecutors and court staff," but provides no explanation regarding why CCTV testimony would then be allowed by Swiss authorities. (Motion at 4.)

 More problematically, any of Buck's witnesses who are Swiss nationals are not subject to extradition. See, e.g., United States v. Bodmer, 342 F.Supp.2d 176, 189 (S.D.N.Y. 2004)(noting that defendant "could not have been extradited from Switzerland because the Swiss government does not extradite Swiss nationals"). Given this legal impediment, these witnesses' testimony may essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony.

U.S. v. Banki provides guidance here. As is likely the case in the instant matter, the witnesses at issue were "entirely beyond the reach of the United States government[,]" as they were Iranian citizens not subject to United States extradition or, as a result, perjury charges. United States v. Banki, No. 10-cr-08, 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010). In denying the defendant's request for CCTV testimony for these witnesses the court noted that, as the witnesses were immune from perjury charges, "the strongest indicator of the reliability of a witness' testimony—the oath—[wa]s effectively" absent. Id.

This made the chance for the government to conduct in-person cross-examination and directly observe the "witnesses' demeanor, body language, and interactions in order to gauge the truth of their statements becomes especially important." Id. Similarly, any CCTV testimony in this case may not be subject to perjury charges, making that testimony unreliable.

The cases Buck cites in support of his Motion are distinguishable. In United States v. Smith, No. 09-cr-100, 2010 WL 5211498, at *2 (W.D.N.C. Dec. 16, 2010), the court allowed a witness to testify remotely from another location within the United States, where the defense counsel offered to make special provisions to swear in the witness. Furthermore, there the specific witness was identifiable, and there was no question that the witness would provide material information. Id. Similarly, in United States v. Guild, No. 07-cr-404, 2008 WL 191184, at *4 (E.D. Va. Jan. 17, 2008), defense counsel was able to confirm that "United States Consular Officers [would] be available in the remote locations where the witnesses are being videotaped" to swear in the witnesses and secure truthful testimony. Here, however, not only has Buck failed to demonstrate that Swiss officials would assist in administering the oath to the witnesses, but any testimony may not be subject to perjury charges, rendering it unreliable. Additionally, Buck provides no substantial argument for why Rule 15 depositions would prejudice him here, aside from stating a preference for live witness testimony. (Reply at 4.) Such depositions, however, would allow for in-person cross examination of any witnesses, and likely lead to more valuable testimony.

Thus, the Court finds that, in these particular circumstances, testimony via live two-way videoconferencing is not warranted and that, therefore, any oral argument

on this Motion is unnecessary. The Court notes, however, that Buck is still free to seek depositions of these witnesses pursuant to Rule 15 if he is so inclined.

### III. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion (Docket Nos. 69, 70) of defendant Stefan Buck to obtain foreign witnesses testimony is DENIED.

**SO ORDERED.**